UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS
E.ST LOUIS DIVISION

| | | |
|---|---|---|
| Annamalai Annamalai | * | |
| AKA:Swamiji Sri Selvam Siddhar | * | |
| | * | |
| Plaintiff-Victim-Petitioner | * | |
| | * | |
| Vs. | * | Case No. 24-1207-JPG |
| FEDERAL BUREAU OF PRISONS | * | |
| UNITED STATES OF AMERICA | * | |
| S.Holem | | |
| Daniel Sproul | * | |
| Nathan Simpkins | | |
| Stacey Byrum | * | |
| S.Wallace | | |
| Leslie Brooks | * | |
| Hottess | | |
| Colette Peters | * | |
| Randall Pass | * | |
| Annabell Fields | * | |
| Emmerich-Warden of FCI-OXFORD | * | |
| JOHN & DOE 1-10 | * | |

**\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\***

<u>VERIFIED COMPLAINT OF MR.ANNAMALAI ANNAMALAI ALSO KNOWN AS SWAMIJI SRI
SELVAM SIDDHAR FOR COMPENSATORY, DECLARATORY, INJUNCTIVE RELIEFS
AND REQUEST FOR JURY TRIAL WITH PUNITIVE DAMAGES</u>

## I.INTRODUCTION

1.

Mr.Annamalai Annamalai also known as Swamiji Sri Selvam Siddhar ( "Plaintiff" )
is respectfully filing this civil complaint.In support of he is invoking Religious
Freedom Restoration Act ( "RFRA" ), Religious land use and institutionalized persons Act,8th
Amendment violations under Cruel . Unusual punishment standard, Illinois Civil
Conspiracy claim,Intentional infliction of emotional distress, Negligent infliction
of emotional distress, Federal Tort Claims 28 U.S.C.§§§ 1346, 2671-80, and Illinois
state law claims.He is also requesting for "injunctive relief" against the warden
of the FCI-OXFORD, who is the "privy" of the Warden Daniel Sproul, who is also
named in this suit, since Mr.Annamalai has been transferred to FCI-OXFORD, before
he files his law suit from USP-MARION, where all of the harms and injuries have
been occured and such actors are located.

Page 1 of 35

## II. JURISDICTION, VENUE AND PARTIES

2.

This court has jurisdiction over all the parties to this litigation.Mr.Annamalai is a citizen of Illinois and presently the resident of Adams county-Wisconsin.All the acts, commissions and or omissions subjeting this law suit has occured at the Williamson couty and as well as in the state of Illinois.

3.

The defendant Federal Bureau of Prisons is a United States Government's corporation and having place of business at Williamson county and as well as illinois.It had custody of Mr.Annamalai when all the torts, injuries, harms, prejudicies and violations occured as pleaded in this complaint.

4.

The Defendant UNITED STATES OF AMERICA is a government's entity.This court has jurisdiction on it as well.This defendant sued for all of the Official capacity claims and as well as on the claims of Federal Tort Claim Act, The defendants Annabell Fields, HOTTESS,—Leslie Brooks are the employyees of USP-MARION and they are all citizens of State of Illinois and conducting their business at this court's jurisdiction.They are all sued in their individual and as well as official capacities.

5.

The defendants Daniel Sproul is the warden of USP-MARION when all such times all the injuries, harms and torts were brazenly, willingly and knowingly orchestrated against Mr.Annamalai.He has been sued as on his official and as well as under personal capacity on certain enmerated claims in this complaint. He conducts business at Illinois. He is the resident and citizen of Illinois

Defendant S.Holem is a supervisory chaplin of USP-MARIOn, and he is being sued on his personal and as well as official capacity.He is conducting his business activities at this court's jurisdiction.

The defendant  Nathan Simpkins is the case Manager of the CMU/CTU wherewhich the plaintiff was "brutally housed and tortured".He is the resident and or citizen of Illinois.He involved personally in various torts, harms and injuries the plaintiff suffered.

The defendant S.Wallace  and Ms.Stacey Byrum were the "Unit Managers" of CMU/CTU at USP-Marion and under belief and information they are the residents of this wiliamson county and also the citizens of Illinois.They were personally involved in various constitutional violations,.torts, injuries and harms suffered by the plaintiff Annamalai.

The Defendant Ms.Colette peters is the Director of Federal Bureau of prisons, who conducts business at Williamson county-Illinois.She appears to be the resident and citizen of District of Columbia.She also personally responsible for various

harms, torts, constitutional violations as suffered by the plaintiff Annamalai. The defendants JOHN & DOE 1-10 are inclusive of Food services supervisor/Administrator and other bureau staffs whose correct names are not known at this time and will be revealed soon to this court. All the JOHN & DOE defendants are the citizens of the State of Illinois and several of them are the residents of Williamson County.

The "current warden of FCI-OXFORD is the "Privy" of the other defendants and also an employee of the defendant Federal Bureau of Prisons, who is being sued "only" for the injunctive reliefs and NOT for any other monetary reliefs.

### III. SHORT BACKDROP ABOUT PLAINTIFF -VICTIM ANNAMALAI ANNAMALAI

6.

Mr.Annamalai Annamalai, whose "Religious title/name" is SWAMIJI SRI SELVAM SIDDHAR.

is a man of HINDU FAITH", a former Hindu High Priest with ove 17,000,000 "faithful followers", who has immigirated to the United States lawfully since, for the past 25 years approximately

7.

He was taken in to federal custody, after "several high powered persons colluded together to destroy and stop the growth of Plaintiff's five Hindu Temples in the States".He was latter convicted on several "fentastic and novel criminal charges" in the year of 2014.Latter in the year of 2019, he has made a historical winning at the Eleventh circuit-united states court of appeals-Atlanta-Georgia, wherewhich the court has thrown away 22 counts of 34 counts of malicious convictions.latter on 07.23.2021, the sentencing judge on the records " stated as the court hates Mr.Annamalai being a Hindu High Priest and also a man of Hindu faith, since to the court,Hindu Religion is a "phony religion" and also repeatedl stated as the court "hates" Mr.Annamalai, and deserves 18 years sentence fo a $11,854- bank fraud convictions, with "A ZERO" restitution and or criminal forfeitures!!

8.

Since November of 2015, mr.Annamalai was thrown at a most notorious prison cell known as "Communications management unit also known as Counter Terrorism unit also known as "north Guantnamo bay cell", "terrorist unit" ( CMU/CTU ).In the due course although Mr.Annamalai never had any kinds of criminal convictions, no connections to any kinds of terrorism and or terroristic activities, he was shipped between two CMU/CTU located at USP-MARIOn and USP-TERRE HAUTE, regularly and suffered extensive pains and sufferings and "still" living with extensive Trauma as we speak.

## IV. F A C T S

### 9.

Mr.Annamalai being a former Hindu High priest a man of Hindu faith always held "sincere "Hindu" religious beliefs.He is a practicing, life long adherent to Hinduism.That one of the core and sincerely held religious beliefs is to neither eat nor come into "close personal contact" with beef and pork.The USP-MARION, Illinois and as well as the present facility FCI-OXFORD, Wisconsin, both serves "beef and Porks" ( in those main messhall and facilities ).

### 10.

The cross contamination that regularly occured/occurs between beef and non-beef products in kitchens violates Mr.Annamalai's religious dietry  restrictions.Most specifically, when the beef meal is being served in the messhall, it is cooked in the same kitchen by the same cooks, served using the same utensils, and served in the same line as the "no-flesh"/Vegetarian options. Becuase of the close proximity and risk of cross contamination, Mr.Annamalai eats in the messhall only when he is very hungry as infrequently as possible.To avoid going hungry he needs to buy some items from commissary by spending his "little money" given by his children from India.

### 11.

Respectfully, Mr.Annamalai cannot eat in the messhall regularly without violating his religious dietary laws of Hindu Religion/faith, which constitutes a substantial burden on his sincerely held Hinu Religious beliefs.[1]

---

1. Mr.Annamalai is from India and of a caste/Tribe known as "Nagarathar".His caste/ Tribe does NOT forbid eating any other Non-vegetarian items of Chicken, lamb, Goats, fish and other sea food items.To avoid any confusion, the Hindu faith certain sects of Hindu faith followers Never and ever eat any kinds of Non-vegetarian items and mostly they are vegans/vegetarians,also certain sects of Hindu faith followers shall not and or will not eat anything growing from the 'inside of the earth', like potatoes, onions, garlic and etc.Mr.Annamalai follows his nagarathar sect of the Hindu faith and eats "Chicken, sea foods, ( not lamb and Goats ( since he does not want to eat them ) eggs and defenitely can not eat the "completely forbidden Beef-meat items in any formats. He was NOt asking for Pure vegetarian religious diet in compliance with the Hindu faith, he in fact repeatedly asked for the religious diets NOT contaminated, cross contaminated and or came in contact with Beef meat items in any manner and also do not / did not want to eat because of his sincerely held Hindu religious beliefs items cooked in any manner at a place(s) where the beef-meat also prepared and or cooked or served. ( Most interestingly the famous "American food chain MCDonalds do not serve "beef related" Burgres ( chhese burgers ) and of any burgers and or items with any kinds of Beef related meat and or ingridents in INDIA ).

12.

Since his arrival at USP-MARIOn, Illinois, the plaintiff has made concerted efforts to live according to the teachings of his Hindu faith, which of course "totally" forbidden, eating and or consuming "Beef meat items in any formats".[2]
Mr.Annamalai also filed grievances, tort claims based on injuries caused to his physical health because of ineffective food lead to several health complications inclusive of worsening diabetes, and also the emotional harms caused by complete indifferent treatment of his need for religious diet in compliance with his Hindu beliefs lead to cause to worsen his physical health harms and injuries, lost his body weight forced hunger lead to his grievences and tort claims and etc, which were on or about February-March of 2023, filed.

13.

Mr.Annamalai was "forced" to go for self select menu from the food menu the 'no-flesh items' from the mainline.However that does not address the food preparation concerns of the Hindu faith, which mirrors that of the Jewish faith as to preparation of kosher foods or that of Muslims as to preparation of halal foods.In USP-MARIOn ( as well as now at FCI-OXFORD ) the prison ( FBOP ) and the prison authorities/ staffs routinely accomdates the meal requirements for inmates who are Jewish and or Muslim, because their foods are specially prepared by "meal Mart" an independant contractor, that provides "common fare" for those inmates.Those inmates, indeed, are not required to "self-select" no  flesh items from the mainline prison menu, but that Mr.Annamalai is a man of Hindu faith and a Hindu religious follower, is being treated indifferently than Jewish and Muslims inmates, in patent and a straight--forward violations of  Equal protection rights guranteed by the United States constitution and as well as in violation of the "establishment clause" [3]

14.

In Mr.Annamalai's situation every one of the named defendants herein were/are personally noticed about their indifferent treatment expressly  and as well as in a repeated expressed and as well as oral manner.However, NONe of them appers

---

2.Lease see Evidence no____, the 'latest FBOP Policy ", about "Religious-certified diets, providing "only" for the "Jewish and Mulsim inmates" and by 'openly-patently 'discriminating" followers of Hindu faith who held sincerely held religious beliefs like Mr.Annamalai by also violating the "equal protection" guranteed by the United States Constutution.This document is a starightforward assault and disrepsect on the Hindu faith inmates like Mr.Annamalai by also preventing to adhere their beliefs.

3. .Please be advised that all over this brief the word "MEAT" refers only about BEEF Meat  and not about Chicken, lamb, goats, sea foods eggs and etc, whether that has been expressly notified or not.

forbidden

forced hunger, fised

②

(3) Please see Evidence No — a latent Religion Diet Policy of defendant FBOP, which clean appear to be a discriminative aid or neg1isive Act by Providing to Melitiou diet onut for Jewad muslim faith mess and not for Under faith meses live Amenlu.

to care about their known and willing participation to harm, injure Mr.Annamalai and complete disrespect to the sincerely held religious beliefs of the plaintiff, and they have also appears clearly that, they have knowingly caused to violate the "rights to practice Mr.Annamalai's faith and also observe" the same.See numerous express correspondences submitted specifically by personally addressing to each one of the defendants here. See Evidence numbers _____ through _____, and by reference fully and expressly reincorporated herein.

### 15.

Mr.Annamalai as a devout Hindu, he must adhere to a diet, devoid of any food that has come in contact with MEAT, MEAT by products, or utensils which have come into contact with meat or meat by products.Even Mr.Annamalai, say he is willing to "select" the "no flesh items from the mainline", it does not address the real concerns of a Hindu faith which require strict adherence in meal preparation, requiring that the foods do not come into contact with any "flesh(MEAT ) items".Further the current common fare/halal food trays coming from the outside vendor as certified religious meals to FBOP is designed for Jewish and Muslim faith.inmates and is incom -patible with Hindu religious practice because the so called "no-flesh tray/meals" and the MEAT trays are being served at the same mainline, prepared at the same kitchen using the same utensils, oils, spoons, pots and also by several of the "inamte-cooks" has "no religious training in what kind of and or how to cook food" for a "Hindu faith followers", which is being well practiced in preparing the food trays for the Jewish and Muslim faith inmates-followers, which are being supplied by an outside contractor- vendor of the defendant FBOP.

### 16.

The patent  indifferent treatment by the Medical staffs of the USP-MARIOn is also quite serious.The medical staffs, even after the repeated complaint of Mr.Annamalai is going hunger most of the days, because he is unable to eat because of the MEAT served  days, simply appears to be disregarded, leading to Mr.Annamalai goes hungry on those days, which has caused him to suffer without sleep because of the hunger pains, also lead to dangerous maintenance of Blood sugar causing his iml balanced diet lead to excessive A1C ( blood glucose levels ) and lead to several and serious "physical impacts".In such periods Mr.Annamalai's blood sugar was even went to the level of A1C to over " 9 " ( 9.5 indeed ). 4

---

4. As a matter of fact,  worsening diabetes has already harmed and injured Mr.Annamalai very well.He as a matter of indisputable fact has "lost body hair" in many parts of his body, by looisng them, because of the debliàting and worsening chronic-deiabetic conditions.As learned from the daughter of the plaintiff who is also a medical professional, as such "loosing hair" from the several parts of the body is the worst sign of exacerbating and or uncontolable chronic diabetes. All such factors are the ·" fruits" of negligent medical care by the Randall pass, Leslie Brooks, of course they were also clearly appears to be not properly trained to address an inmate with religious meals and as  well medical diets deprivation, in an audacious manner, even after the repeated Notices orally and as well as expressly submitted to them.

Page 6 of 35

V. CLAIMS

## Claim number -1

## Violations under Religious Freedom and Restoration Act ( "RFRA" ) and under Religious land Use and Institutionalized persons act against Federal Bureau of Prisons, Colette Peters, S.Holem, Daniel Sproul, Stacey Byrum, S.Wallace Nathan Simpkins, Randall Pass, and JOHN & DOE 1-10

17.

The Plaintiff expressly reincorporate items 1-16 herein as if they are fully restated by reference.

18.

The Religious Freedom Restoration Act of 1993 (RFRA) secures Congress' view of the right to free exercise under the First Amendment, and it provides a remedy to redress violations of that right. Congress passed the Act in the wake of the United States Supreme Court's decision in which held that the First Amendment tolerates neutral, generally applicable laws that burden or prohibit religious acts even when the laws are unsupported by a narrowly tailored, compelling governmental interest. 42 U.S.C.S. § 2000bb(a). RFRA sought to counter the effect of that holding and restore the pre-Smith ``compelling interest test'' by providing a claim to persons whose religious exercise is substantially burdened by government. §§ 2000bb(b)(1)-(2). That right of action enables a person to obtain appropriate relief against a government. § 2000bb-1(c). A ``government'' is defined to include a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States. § 2000bb-2''

The legal backdrop against which Congress enacted the Religious Freedom Restoration Act of 1993 (RFRA) confirms the propriety of individual-capacity suits. The phrase ``persons acting under color of law'' draws on one of the most well-known civil rights statutes: 42 U.S.C.S. § 1983. That statute applies to ``person[s]. under color of any statute,'' and the United States Supreme Court has long interpreted it to permit suits against officials in their individual capacities. Because RFRA uses the same terminology as § 1983 in the very same field of civil rights law, it is reasonable to believe that the terminology bears a consistent meaning. A suit against an official in his personal capacity is a suit against a person acting under color of law. And a suit against a person acting under color of law is a suit against ``a government,'' as defined under RFRA. 42 U.S.C.S. § 2000bb-1(c).

Persons may sue and obtain relief ``against a government,'' 42 U.S.C.S. § 2000bb-1(c), which is defined to include a branch, department, agency, instrumentality, and official (or other person acting under color of law) of the United States. 42 U.S.C.S. § 2000bb-2(1).

A person whose exercise of religion has been unlawfully burdened may obtain appropriate relief against a government. 42 U S C S § 2000bb-1(c)

A ``government,'' under the Religious Freedom Restoration Act of 1993 (RFRA), extends beyond the term's plain meaning to include officials. And the term ``official'' does not refer solely to an office, but rather to the actual person who is invested with an office. Under RFRA's definition, relief that can be executed against an ``official. of the United States'' is relief against a government. 42 U.S.C.S. §§ 2000bb-1(c), 2000bb-2(1). Not only does the term ``government'' encompass officials, it also authorizes suits against other persons acting under color of law. 42 U.S.C.S. § 2000bb-2(1).

The Religious Freedom Restoration Act of 1993 prohibits the federal government from imposing substantial burdens on religious exercise, absent a compelling interest pursued through the least restrictive means. It also gives a person whose religious exercise has been unlawfully burdened the right to seek appropriate relief. ``Appropriate relief'' includes claims for money damages against government officials in their individual capacities.

Given that the Religious Freedom Restoration Act of 1993 (RFRA) reinstated pre-Smith protections and rights, parties suing under RFRA must have at least the same avenues for relief against officials that they would have had before Smith. That means RFRA provides, as one avenue for relief, a right to seek damages against government employees.

A damages remedy is not just ``appropriate'' relief as viewed through the lens of suits against government employees. It is also the only form of relief that can remedy some RFRA violations. For certain injuries, effective relief consists of damages, not an injunction.

The Religious Freedom Restoration Act's express remedies provision permits litigants, when appropriate, to obtain money damages against federal officials in their individual capacities.

19.

RFRA's express remedies provision permits litigants, when appropriate, to obtain money damages against federal officials in their individual capacities. Pp. ___ - ___, 208 L. Ed. 2d, at 300-304.

(a) RFRA's text provides that persons may sue and ``obtain appropriate relief against a government," 42 U. S. C. § 2000bb-1(c), including an ``official (or other person acting under color of( law) of the United States," § 2000bb-2(1). RFRA supplants the ordinary meaning of ``government" with a different, express definition that includes ``official[s]." It then underscores that ``official[s]" are ``person[s]." Under RFRA's definition, relief that can be executed against an ``official . . . of the Unites States" *is* ``relief against a government." This reading is confirmed by RFRA's use of the phrase ``persons acting under color of law," which has long been interpreted by this Court in the 42 U. S. C. § 1983 context to permit suits against officials in their individual capacities. See, *e.g., Memphis Community School Dist.* v. *Stachura,* 477 U. S. 299, 305-306, 106 S. Ct. 2537, 91 · L. Ed. 2d 249. Pp. ___ - ___, 208 L. Ed. 2d, at 300-301.

(b) RFRA's term ``appropriate relief" is ``open-ended" on its face; thus, what relief is `` 'appropriate' " is ``inherently context dependent." *Sossamon* v. *Texas,* 563 U. S. 277, 286, 131 S. Ct. 1651, 179 L. Ed. 2d 700. In the context of suits against Government officials, damages have long been awarded as appropriate relief,

20.

Plaintiff Annamalai states, "RFRA was designed to provide very broad protection for religious liberty." *Burwell* v. *Hobby Lobby*, 573 U.S. 682, 706, 134 S. Ct. 2751, 189 L. Ed. 2d 675 (2014). Although *Koger*          ', is not directly on point, the Seventh Circuit still recognized the right to accommodation for an inmate's idiosyncratic dietary restrictions associated with his religion. *See Koger*, 523 F.3d at 802-803. The same was true in *Jones*, where the inmate had to purchase **halal** meat from the prison commissary to supplement his diet because his interpretation of Islam required regular meat intake-as here, the vegetarian kosher alternative wouldn't do. *Jones*, 915 F.3d at 1148. There too, the Seventh Circuit noted that "[w]hen the state forces a prisoner to choose between adequate nutrition and religious practice, it is imposing a substantial burden on his religious practice . . . ." *Id.* at 1150. The court also noted that two 2016 Supreme Court decisions "articulated a standard much easier to satisfy" than the *effectively impracticable* standard used in *Koger*: "After these recent cases, **there can be no doubt** that when the state forces a prisoner to give away his last dime so that his daily meals will not violate his religious practices, it is imposing a substantial burden.

that the defendants' refusal to provide him, **Hindu** meals violated rights clearly established by RFRA, which prohibits the Government from "substantially burden[ing] a person's exercise of religion . . . ." 42 U.S.C. § 2000bb-1(a). "The term 'religious exercise' includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief." *Id.* § 2000cc-5(7)(A); *see id.* § 2000bb-2(4).

Plaintiff directs the courts attention , to the Seventh Circuit's decision in *Koger v. Bryan*, 523 F.3d 789, 799 (7th Cir. 2007), where the court "held that it was a violation of the First Amendment and the [Religious Land Use and Institutionalized Persons Act ("RLUIPA")] for prison officials to deny an inmate's request for a non-meat diet on the ground that his religion does not require such a dietary religion," *Nelson v. Miller*, 570 F.3d 868, 878 (7th Cir. 2009) (citing *Koger*, 523 F.3d at 797-800), *abrogated on other grounds, Jones v. Carter*, 915 F.3d 1147, 1149-50 (7th Cir. 2019). There, the plaintiff-inmate was a member of the Ordo Templi Orientis ("OTO") religion, which "may, from time to time, include dietary restrictions as part of his or her personal regiment of spiritual discipline." *Koger*, 523 F.3d at 794 (internal quotation marks omitted). The inmate-who would not eat "meat or anything on his meal tray that had touched meat"-requested "a non-meat diet as part of his religious practices." *Id.* at 793. Although the prison offered "vegan and lacto-ovo vegetarian" meals that "would have satisfied [the inmate's] request," officials refused to give him either unless he complied with a prison "policy requiring [him] to verify his membership in OTO" with "a 'letter' from the religious organization sent directly to him." *Id.* at 794-96. Because the OTO "religion lacks clergy members as traditionally understood," the Seventh Circuit concluded that the prison's "clergy verification requirement was responsible for rendering [the inmate's] religious exercise effectively impracticable," thus "impos[ing] a substantial burden on [his] religious exercise." *Id.* at 799. The court also found that the officials were not entitled to qualified immunity because the inmate asserted a clearly established "right to religious accommodation for a religious practice demonstrably associated with, though not compelled by his religion." *Id.* at 802.

Page 8 of 35

21.

The Federal Bureau of Prisons is violating with its bureau staffs as noticed herein, are violating the Religious land use and institutionalized persons act ( RLUIPA )& RFRA, by enforcing a "food policy" that has prevented Mr.Annamalai from exercising his sincerely held Hindu religious beliefs.The FBOP's policy has substantially burdened the plaintiff's free exercise of his Hindu religion.In the plaintiff's case, he indisputably engaged in a religious execrcise as mandated by his Hindu Religion about not to consume any 'MEAT' related items in any manner.Here the FBOP and the bureau staffs directly and or indirectly substantially and knowingly burdened that religious exercise.The FBOP and the named individual actors placed the plaintiff with "significant pressures" which directly coerces the religious adherent to conform his behaviour accordingly.Here such burden were/are not simply incidental and in fact has placed the plaintiff more than an inconvenience on his religious exercises.Such intentional and knowing acts constitutes a substantial burden under RLUIPA and as well as RFRA, and significantly hampered the plaintiff's religious practice. The defendants as noticed herein have substantially burdened the sincerely held Hindu Religious beliefs of the plaintiff.

22.

RLUIPA provides, "No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution . . . even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person - (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." 42 U.S.C. § 2000cc-1(a); *Williams v. Annucci*, 895 F.3d 180, 188 (2d Cir. 2018). Under RLUIPA, if a plaintiff shows that the state has imposed a substantial burden on the exercise of sincerely held religious beliefs, "the burden then shifts to the state to demonstrate that the challenged policy or action furthered a compelling governmental interest and was the least restrictive means of furthering that interest." *Williams*, 895 F.3d at 188 (cleaned up).

RLUIPA expressly provides for a private right of action for individuals whose religious exercise is unlawfully burdened while incarcerated in prison. See 42 U.S.C. § 2000cc-2; Gardner v. Riska, 444 Fed.Appx. 353, 355 (11th Cir. 2011)("RLUIPA creates an express private cause of action for injunctive and declaratory relief against the government, which includes 'States, counties, municipalities, their instruments and officers, and persons acting under color of state law.'" (quoting Sossamon v. Texas, 563 U.S. 277, 131 S. Ct. 1651, 1656, 179 L. Ed. 2d 700 (2011)). Accordingly, "[a] person may assert a violation of this chapter as a claim or defense in a judicial proceeding and obtain appropriate relief against a government." Id. § 2000cc-2(a).

RLUIPA requires the government to justify any substantial burden on a prisoner's religious exercise by demonstrating a compelling governmental interest. See Smith v. Allen, 502 F.3d 1255, 1256 (11 Cir. 2007), abrogated on other grounds by Sossamon v. Texas, 563 U.S. 277, 131 S. Ct. 1651, 1659, 179 L. Ed. 2d 700 (2011). Under Section 3 of RLUIPA provides that "[n]o government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution...even if the burden results from a rule of general applicability." 42 U.S.C. § 2000cc-1(a)(1).

23.

In Annamalai's situation he was substantially burdened on his religious exercises, by the policies of the FBOP and also by the named defendants individually. See the enclosed Declaration for more specific acts committed by every one of the individual defendants as well, and by reference fully and expressly reincorporated herein. See Evidence no.____.Here the plaintiff was required by the defendants to choose between following the precepts of his religion and forfeit benefits, on the other hand, and abandoning one of the precepts of his religion on the other hand.In the context of the religious dietary restrictions, the plaintiff has a "right to a diet consistent with his religious scruples". Here the FBOP is required for a prison diet to be provided to the plaintiff without burdening the plaintiff's free exercise of religion and a religious diet sufficient to sustain the plaintiff's to keep in good health without violating his religious dietary laws.

24.

Mr.Annamalai humbly states that, he regularly goes hungry in order to maintain his religious beliefs, which require his meals to be prepared in a facility where there is no cross contamination with MEAT ( beef ).Mr.Annamalai while he was at USP-MARION, he was going hungry attempting to avoid the messhall and often was "forced"to cobble together food he purchased from commissary, of course again nothing was available in the commissary as "meals" to consume anyway.He believes he ate in the messhall meals not even half of the times every week and he has gone hungry "more times than he can count".After he has been transferred to FCI-OXFORD the food situation has worsened.

25.

The FBOP the so called policies relates to religious dietary is simply a mockery. How come the same FBOP can brazenly supply the religious dietary in compliance of Jewish and Muslim inmates and at the same token it is not able to serve the religious dietary for an inmate like Mr.Annamalai in compliance with his sincerely held Hindu beliefs?Their policies are NOT restrictive means by seeing these kinds of mockery and indifferent and as well as preferential treatment of inmates who are similarly situated, by also the Bureau's patent discrimination on its face.

26.

To be very clear the "non-flesh menu" as being served also do not comply with the Hindu religious compliance indeed.To simply put they are all prepared in the same kitchen by the same inmate cook,by using the same cross contaminated spilled over meat products and also served in the same main line at chow hall with meat items. To put it in a simple means, there is nowhere a man of Hindu faith can eat a meals in a place wherewhich the MEAT also prepared and or served.

See Evid —

Same Inmate Cords

27.

As a nutshell, Mr.Annamalai is "still" kept in the same continued violation of his religious exercises and still NOT provided with religious diets in compliance with his sincerely held religious beliefs and also forced to violate his religious dietary laws at FCI-OXFORD,-warden who is employee and the privy of defendants FBOP and Warden Sproul, for whom an injunctive relief also sought via this petition separately.To be very clear that, there is not even remotely any security and orderly running of the prison would be threatened by simply be in compliance with Mr.Annamalai's sincerely held religious beliefs, by providing a certfied Hindu Meals like the ones the Jewish and Muslim inmates getting now.Providing a pre packaged Hindu meals from an outside vendor in compliance with Hindu faith will not burden the defendants in any manner.Of course Mr.Annamalai has a "right" to eat and shall not be held in constant hunger in an indifferent manner, with also by forcing him to choose between food Vs Religion.Mr.Annamalai is making these RFRA and RULIPA claims for damages amount of $25 Million dollars against the FBOP and as well as all of the individual actors in their individual and or personal capacity for such intentional and obvious violations they have already committed.It appears that Mr.Annamalai may be only entitled for reliefs under RLUIPA, for injunctive reliefs and not for monetary reliefs, if that is correct, then he asks for monetary compensatory relief of $25 million against FBOP and all of the individual actors on their personal capacity under RFRA.

<u>Claim number -2</u>

<u>Stand alone claim of Violation of Free Exercise Clause by the Federal Bureau of Prisons, Colette Peters S.Holen, Daniel Sproul, Nathan Simpkins, Stacey Byrum, S.Wallace, Randall Pass and JOHN & DOE -10</u>

28.

The plaintiff expressly reincorporate paragraphs/items 1-27 herein as if they are fully restated.

29.

The defendants as noticed in this claim "all" are violating free exercise rights of the plaintiff intentionally and willingly, even after they have been placed in repeated notices of such violations.See, Evidence numbers_____ to _____, by reference fully and expressly reincorporated herein.They have intentionally failed to provide the plaintiff with his requested Hindu dieatry accomadations.Most notably, since the year of 2010, the United States Supreme Court had determined that a prisoner has a right to freely exercise his religion if that exercise does not compromise institutions security. See O'Lone Vs. Estate of Shabazz, 482 U.S. 342, 348, 107 S.Ct 2400, 96 L.Ed 2d 282 ( 1987 ).



FCI- Oxford wardell, who is

revision                              orderly

30.

Now it clearly appears from the intentional actions of depriving the religious dietary by all of these defendants who are charged with enforcing an unlawful policy or regulation that prohibits plaintiff from pratcicing his Hindu Religious beliefs.

31.

"An inmate requesting a special diet on the basis of a sincerely held religious belief, has 'a constitutionally protected interest upon which the prison administration may not unreasonably infringe.'" Williams v. Bitner, 455 F.3d 186, 192 (3d Cir. 2006) (citing DeHart v. Horn, 227 F.3d 47, 53 (3d Cir.2000)). To state a cause of action of violation of First Amendment Rights, it must be determined whether the plaintiff is sincere in his religious beliefs, and whether the regulation impinging on the free exercise of his religion is reasonably related to legitimate penological interests. Turner v Safley, 482 U.S. 78, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987), O'Lone v Estate of Shabazz, 482 U.S. 342, 107 S. Ct. 2400, 96 L. Ed. 2d 282 (1987). At this juncture, the Plaintiff has stated a First Amendment violation by Defendant whom has substantially burdened Plaintiff's ability to practice his **Hindu** religious beliefs.

32.

Defendants are violating his constitutional rights under the First Amendment Free Exercise Clause by creating and/or otherwise enforcing regulations that impose limitations on the exercise of his sincerely held **Hindu** religious beliefs. He maintains that the limitations imposed upon him are not related to any legitimate penological interests because the BOP has been able to create a method whereby it accommodates the meal requirements of other religious faiths, but has failed to even investigate or otherwise contract to ensure that Plaintiff, a devout **Hindu** follower, is likewise able to practice his seriously held religious faith.

Courts, generally, have found that to deny inmates food that satisfies the dictates of their religion unconstitutionally burdens their right to free exercise of their faith. See e.g. Ford v. McGinnis, 352 F.3d 582, 597 (2d Cir. 2003) (holding that prisoners have a "clearly established" right "to a diet consistent with [their] religious scruples"); DeHart v. Horn, 227 F.3d 47 (3d Cir. 2000) (finding that Buddhist plaintiff whose request for a vegetarian diet was denied because vegetarianism was not an absolute requirement of Buddhism had stated a free exercise claim, and remanding for further factual findings regarding the existence of countervailing penological interests); Love v. Reed, 216 F.3d 682 (8th Cir. 2000) (holding that denial of inmate's request for bread and peanut butter so that he could prepare his Sunday meals in his cell on Saturday -- thereby avoiding preparing food, or benefitting from the preparation of food by others, on the Sabbath -- violated prisoner's free exercise rights); Makin v. Colo. Dep't of Corr's, 183 F.3d 1205 (10th Cir. 1999)(holding that prison officials' failure to accommodate inmate's meal requirements during Ramadan violated his free exercise rights); Bass v. Coughlin, 976 F.2d 98, 99 (2d Cir. 1992) (per curiam) (reaffirming Kahane v. Carlson, 527 F.2d 492, 495 (2d Cir. 1975) (finding that Orthodox Jewish inmate had right to provision of kosher meals)); Harris v. Ostrout, 65 F.3d 912, 918, n.5 (11th Cir. 1995) (observing that the plaintiff's allegation of inadequate diet was a valid constitutional claim; and in doing so, noting that the Court earlier had granted prisoners a limited right to receive a religious diet, in its opinion in Martinelli v. Dugger, 817 F.2d 1499, 1505-06 (11th Cir. 1987), *cert. denied*, 484 U.S. 1012, 108 S. Ct. 714, 98 L. Ed. 2d 664 (1988)).

A prisoner's right to exercise his religious beliefs is not extinguished when he enters the jail or prison doors. See O'Lone and Bell v. Wolfish, 441 U.S. 520, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979). The Eleventh Circuit, in Martinelli, supra, held that a jail should accommodate an inmate's religious dietary restrictions, subject to budgetary and logistical limitations, but only when the belief is "truly held," Martinelli, 817 F.2d at 1504-06, and Courts, generally, have found that to deny inmates food that satisfies the dictates of their religion unconstitutionally burdens their right to free exercise of their faith.



33.

Plaintiff respectfully states that, the named defendants in this claim all are preventing ( prevented ) and or otherwise have interfered with the plaintiff's ability to practice his sincerely held Hindu Religious beliefs by failing to ensure that the plaintiff's meals are bereft of MEAT or MEAT by-products, and that no utensils that have come into contact with MEAT or by-products of MEAT are used to prepare Hindu meals.Here the rights given under Free Exercise clause has been violated by failing to provide the plaintiff Annamalai who was also a former Hindu High priest requested. simple and straightforward relief of Hindu meals in compliance with his sincerely Hindu beliefs.The plaintiff is seeking $25 Million as compensatory and or of damages which falls in to any kinds of category for thi this claim from the FBOP and from the individual defendants personally also.

### Claim Number -3

### Violation of Establishment clause by Federal Bureau of prisons and Colette Peters, S.Holem (chaplin ), Daniel Sproul ( warden ), Stacey Byrum S.wallace, Nathan Simpkins, Randall Pass and JOHN & DOE 1-10

34.

Mr.Annamalai fully reincorporates paragrapghs 1-33 as if they are fully restated herein by reference.

35.

The named defendants in this claim 'all" have intentionally violated the rights given under Establishment clause, because the FBOP policy favors "jewish and Muslim" inmates to oberve their sincerely held religious beliefs, by accomadating the religious diets of Kosher and Halal, and however NOT Mr.Annamalai.The individual defendants patently "executed" such intentional violation of Establishment clause by discriminating the plainiff by also preventing his ability to obesrve and .practice his sincerely held hindu religious beliefs, by knowingly and willingly preventing or tacîtly denying the request for Hindu meals. See Evidence numbers _____ through _____, and they are fülly and expressly reincorporated herein.5

---

5. Here, the defendants are appears to be well aware of the harms and injuries occuring to Mr.Annamalai's physical and mental health conditions, and such an inference could be easily drawn about a substantial violation of Establishment clause and also they have either intentionally and or ⸱ negligently in several occassions caused to harm and injure Mr.Annamalai and lead to worsening chronic health conditions, and also lead to the present indisputable Mental health care Level -II inmate as we speak.

36.

The Establishment Clause states that "Congress shall make no law respecting an establishment of religion." U.S. Const. amend. I. The clause "means at least 'that [n]either a state nor the Federal Government....can pass laws which aid one religion, aid all religions, or prefer one religion over another.'" Hartmann v. California Dep't of Corr's & Rehab., 707 F.3d 1114, 1125 (9th Cir. 2013)(quoting Everson v. Board of Education of Ewing Twp. et al., 330 U.S. 1, 15, 67 S. Ct. 504, 91 L. Ed.711 (1947). For purpose of an Establishment Clause violation, "a government policy need not be formal, written, or approved by an official body to qualify as state sponsorship of religion." Canell v. Lightner, 143 F.3d 1210, 1214 (9th Cir. 1998). Where a governmental policy gives a preference to one religion over another, the court must treat that policy as suspect and apply strict scrutiny. Larson v. Valente, 456 U.S. 228, 246, 102 S. Ct. 1673, 72 L. Ed. 2d 33 (1982). Such a policy will be presumed unconstitutional unless it is "justified by a compelling governmental interest," and the policy "is closely fitted to further that interest. Id. at 247, 102 S. Ct. 1673. See, e.g., Evans v. Cal. Dep't of Corr. & Rehab., 2012 U.S. Dist. LEXIS 5373, 2012 WL 137802 (C.D. Cal. Jan. 18, 2012)(prison officials violated the Establishment Clause by providing kosher meals to Jewish inmates, but not providing similar accommodations to Muslim inmates).

## Claim Number -4
### Violation of Equal Protection against Federal Bureau of Prisons, Chaplin S.Holem Warden Daniel Sproul, Stacey Byrum, S.Wallace, Nathan Simpkins, Randall Pass, Annabell Fields,Leslie Brooks, & JOHN & DOE 1-10

37.

Mr.Annamalai by reference, fully and expressly reincorporate paragrapghs 1-36, as if they are fully restated herein.

38.

The named defendants every one appears to have knowingly, willingly and or tacitly agreed and also by understanding of all means caused to violate the "Equal protection" clause by providing Jewish and Muslim inmates with the Kosher and Halal religious trays every day but has denied Hindu faith followers like Mr.Annamalai to/the opportunity to pursue his/their religious beliefs.In this respect Mr.Annamalai is "similarly situated like Jewish and Muslim inmates," since all are inmates serving time and those Jewish and or Muslim inmates are "not special ones" and or such religion is the "only" special religion in the FBOP.Here the FBOP has engaged in invidious discrimination against Mr.Annamalai ( even after they have been placed on notice about their discrimnative acts, see, Evidence numbers _____ to _____ ) based on Mr.Annamalai's Hindu Religion, Hindu faith, his national orgin being an Indian American with sincerely held Hindu faith-beliefs.In the plaintiff's situation the 'similarly situated" Jewish and Muslim prisoners at the FBOP were allowed to comply with and also adhere the sincerely held religious beliefs of theirs, of course the plaintiff is/was not.Its so apparaent to see the brazenly violated "equal protection" by the named defendahts for this claim herein.

Another freed of LESLIE Brooks

39.

Mr.Annamalai respectfully submit that these defendants as shown for this claim, appears to have been acting with "intentional discrimination" towards the plaintiff. Here the defendants clearly appears to aware of consequences of their intentional discrimination of the plaintff, by taking in to account various personal correspondences directed towards them.See, Evidence numbers _____ to _____, however they also appers to consciously disregarded the genuine plea of the plaintiff to observe his sincerely held religious beliefs, indeed.Here it involves the "decisonmaker's undertaking a course of action"( not to care about the genuine request for Hindu Dietary needs of the plaintiff ) to place Mr.Annamalai and also other Hindu faith follwers to have an adverse effects on them, by patently discrimnating and or disregarding the need to adhere such sincerely held Hindu religious beliefs.

40.

Here these defendants patently took a course of action to prevent discriminate and also disregard the real need of such Hindu Religious diets for Mr.Annamalai and thereby they have caused to brazenly violate the "Equal protection" guranteed by the United states Constitution and also harmed and injure Mr.Annamalai and all lead to an injury in fact for Mr.Annamalai now.

Mr.Annamalai is seeking $25 million . compensatory damages and or damages of $25 million under any law and or provison applicable to such claim as invoked herein.

## Claim Number -5

Money damages for the violation of Eighth Amendment's cruel & Unusual punishments against FBOP, Daniel Sproul, Colette Peters, S.Holem, Nathan Simpkins, S.Wallace, Randall Pass, Leslie Brooks,  Stacey Byrum and JOHN    & DOE 1-10

41.

Mr.Annamalai fully and expressly reincorporate paragraphs 1-40 herein as if they] are fully restated by reference.

42.

The defendants are sued for this claim both in official and personal capacity for this cliam.These defendants knowingly and intentionally and willfully subjected Mr.Annamalai to the Cruel and unsusal punishments. Please see the express correspond -ences submitted to 'place them on advance notice" about their potential violations of the Eighth amendment in their personal and as well as in their official capacity by discrimination and restricted the plaintiff's ability to observe his sincerely held Hindu beliefs, by not able to have Hindu dietary meals, which has caused serious "physical impacts" and toll on the plaintiff's health as well as mental health.

43.

There can be even some one or the defendants can dispute Mr.Annamalai is not a human or a breathing man with flush and blood like the individual defendants sued in this claim.Of course, Mr.Annamalai needs to "eat" to survive and also maintain a healthy life with proper nutrition.He was NOT sentenced to prison ( FBOP ) to undergo enarmous mental, emptional, and physical tortures to gets assaulted on the ability of  to observe his religious dietary in compliance with his Hindu beliefs.Mr.Annamalai is a Chronic care inmate suffering with "diabetes, high blood pressure, high coblestral, prostate, psynus and also MENTAL CARE LEVEL II inmate.Having said and indisputably BODY MIND connects every day.How could Mr.Annamalai can be without constant stress, trauma, mental anguish, mental pain, when he is undergoing constant hunger not for hours not for days not for weeks not for months, whereas for years, since he is/was unable to eat the chowhall food which are contaminated or cross contaminated and or came in contact with BEEF?

44.

Mr.Annamalai also has lost significant weight, his blood sugar level ( A1C ) has exorbitantly increased to above " 9 " ( A1 C 9.5 ) which is "death row level" warning to die by stroke and or heart attack(s), because of his inability to receive a proper Hindu Religious dietary, he most of the days goes hunger and several days of the  weeks ·"cried" with constant Hunger and "nothing to eat" , since  being a Chronic Diabetes inmate he can not eat "everyting", and make sure none of the items he eats do not shoot up and or diminish his blood sugar level.Most notably there is "nothing" available in the USP-Marion's commissary for a chronic diabetes inmates to buy and consume at all either.The commissary also does not sell any meal or food items in compliance with Hindu Religion at all.Every effort to follow up with  the Commissary supervisor Ms.Hottes as well,

patently went to drain and Ms.Hottes also brazenly involved in the discrimination acts to harm and injure Mr.Annamalai.

45.

Here any one with "common sense understanding"  and also repeatedly advised by the doctors all over the nation that, a Diabetic chronic care man/woman, shall have "appropriate diet, medicine and Exercise".Here, how come Mr.Annamalai·can maintain chronic diabetes, condition without a proper food? How hard for the FBOP and these defendants to understand that, Mr.Annamalai s is NOT sentenced to get tortured mentally emotionally and physically and ·not to suffer without food to "eat"on a day to day basis"?Here these defendants clearly appears to have acted with 'deliberate indifference' to the present and as well as to the future health of Mr.Annamalai.

not a human or a

Chronic diabetic

46.

Most notably Mr.Annamalai was being tortured mentally, physically and emotionally be his inability to get "food to eat" in compliance with his sincerely held religious beliefs, by these defendants clearly appears to have subjective knowledge of the serious harms of Mr.Annamalai who is "Chronic care inmate" both Mentallly and as well as physically, and these defendants disregarded the risk and their conduct here was/is "more than negligence", indeed, they were repeatedly placed on notice about such harms expressly and as well as orally by Mr.Annamalai.Now all such harms lead to Mr.Annamalai has been elevated to "MENTAL HEALTH CARE LEVEL -II" inmate with receiving "shots" ( Ozempic ) instead of his pills regime which he was receiving for years for his diabetes ( chronic diabetes ) The present OZEMPIC made his health more worst since Mr.Annamalai is "living with constant diaheria" which is one of the serious side effects of such medication, and Mr.Annamalai is living as a "sick dog" waiting to die very soon as we speak, with serious bodily harms and physical impacts.

47.

Mr.Annamalai has been "forced in to starvation," and even the present FBOP facility at FCI-OXFORD, still continues the same "tortures" for Mr.Annamalai by simply disregarding his repeated requests for Hindu religious meals.Mr.Annamalai is very sick mentally, physically and he is "always lacking energy to get out" and to involve in any kinds of meaningful recereating activities.Indeed he has also lost a significant weight because of the absense of proper food/diet in compliance with his hindu faith as we speak. Most of the days he ca not even sleep in the night times because of the "forced starvation" he has endured and still enduring such cruel and unusual punishments for his so called $11,854- bank fraud convictions with zero loss to any one and anywhere in the world with no prior criminal records.

48.

Here the defendants brazenly violated the eighth amendment protection given to Mr.Annamalai, knowingly and appears to be willingly.The ongoing physical harms are still ongoing and Mr.Annamalai is being get hurt, even he has typed this brief with extensive starvation, stomcah pains caused by hunger and with tears in his eyes by looking at these individuals and the FBOP all acted as with "evil intent" to harm and torture injure Mr.Annamalai.Here the defendants appears to have engaged in extreme and outrageous conducts, and thereby has inflicted severe pains and sufferings for the plaintiff.Mr.Annamalai respectfully submit that such conducts of these defendants are/were intentional and evil acts.( To harm a fellow man knowingly, willingly and intentionally is an "evil act" as per the Hindu faith. Secondly preventing a fellow human's ability to "eat" food constitutes an unforgivable sin in the Hindu religion.).

17.

( health )    ( as )

( He had Serious Medical Impacts )

( Heavens )

( Body hair )

erased

8m

49.

Mr.Annamalai has suffered several physical, emotional and mental harms by the acts of these defendants and the Physical impacts of such harms and injuries several of them are irreparable now, like one with damaging the pancreas and constant manner keeping the plaintiff on a "forced hunger".Mr.Annamalai is seeking $50 Million as damages against all of the defendants as named in this claim in any and all capacities.

## Claim Number -6
### Federal Tort claim or in an alternative Illinois tort claim against
### UNITED STATES OF AMERICA

50.

Mr.Annamalai fully and expressly reincorporate paragraphs 1-49 as if they are fully and expressly restated herein by reference.

51.

Mr.Annamalai has properly exhausted any and all adminsitrative exhaustion for this claim by properly filing the so called Tort claim via SF-95 form to the Federal Bureau of prisons.

52.

The federal actors Daniel sproul, Colette Peters, stacey Byrum, S.wallace, Brooks, Hottess simpkins, Randall Pass, JOHN & DOE 1-10 and FBOP all individually and or in combination, knowingly, willfully, and or with tacit understanding harmed and injured Mr.Annamalai by "failing to protect" Mr.Annamalai from the "forced starvation" and as well as to get serious injuries to his physical health by worsening diabetes with worsening A1C level, loosing weights, live with constant hunger pains on a day to day basis.

### A. Federal Tort Claim against United States of America for FBOP officials' Intentional Infliction of Emotional Distress on Plaintiff Annamalai

53.

The BOP officials Daniel Sproul, Colette Peters, Nathan Simpkins, Stacey Byrum, S.Wallace, S.Holem, Trust Fund Supervisor Hottes, Randall Pass, L.Brooks, JOHN & DOE 1-10 Pass, all individually or collectively, willingly, knowingly and or with tacit understanding caused to inflict the emotional distress of the Plaintiff in a Repeated manner for several months and in a continuing manner.Mr.Annamalai was/is forced in to starvation, stayed with hunger, with worsening and uncontrollable Diabetes with highly elevated A1C level, emotional and mental tortures for he is/was unable to adhere the sincerely held Hindu Religious beliefs by "patently declined" to give the Hindy Dietary/meals and any meals in accordance with the Hindu faith. Going and eating even for few times a week was so painful and traumatic by seeing that, he needs to use the same plates spoons used to feed other inmates with MEAT

and any foods are all prepared in the same kitchen where the MEAT also being prepared, and the inmates serving food 'casually" using the same spcons to serve the food for Mr.Annamalai and at the same time serving the adjacent tray containing MEAT by spilling over.

54.

Here these BOP officials although have/had proper notice about Mr.Annamalai's sincerely held Hindu religious beliefs are being violated, they have acted indifferently and also appears to have acted in a discriminative manner by issuing religious diets to other inmates who are of Jewish & Muslim faith to oberve their religious diets.It begs a simple a simple question about why Mr.Annamalai's sincerely held religious-beliefs shall be discriminated, disregarded,assaulted, disrespected and also violated, when the same FBOP staffs/officials "openly" serving religious diets for other inmates like of Jewish and Muslim faith?

55.

Here the FBOP officials acted in an extreme and outrageous way, intended to inflict severe emotional distress or they knew of the high probability that it would occur and would cause Mr.Annamalai to suffer more emotional distress.Most notably the Starvation has lead to several "physical harms" already with worsening diabetes to "his health" and the constant infliction of emotional distress lead to unbalanced glucose level, to put in another manner, a chronic diabetic inmate like Annamalai shall be in "peace" and to avoid stress so that he can maintain better blood glucose level.Of course without "food" its impossible to manage and or maintain a proper blood glucose level at all, and that's what openly happeining here still, as we speak by the same conducts of the present warden of FCI-OXFORD, who is the Privy" of the FBOP officials as noticed in this claim. The worsening diabetes even caused to loose body hairs completely in several parts of Mr.Annamalai's body, indeed.

56,

The physical and emotional injuries are so visible by looking at the "weight loss" of Mr.Annamalai now, he has lost over 25 lbs at least after these kinds of emotional physical and mental tortures.Also such infliction of emotional distress has lead to Mr.Annamalai to 'injure" more in his brainwise, caused to have "brain injuries" Indisputably after such brain injuries, tortures, starvation, now Mr.Annamalai has been desiginated as "CARE LEVEL -II" Mental health inmate.Mr.Annamalai respectfully states that NONE of the FBOP staffs have any respect to Mr.Annamalai's deteriorating health, emotional, brain, mental and as well as physical injuries.Most notably the defendant's physician Mr.Randall Pass even repeatedly notifide about

such harms and injuries of debilating health conditions, which also have been appears

to be completely disregarded and he also appears that did not care about a chronic care

patient-inmate like Mr.Annamala shall "eat" to manage his proper blood Glucose

level.How hard for these FBOP officials to understand a simple tact that, Mr.Annamalai to eat

every day and also has a "right" to not to get harmed by these FBOP's officials

patent indifferent treatment towards Mr.Annamalai.Also the official D.Annabell

Fields of USP-MARIOn, the so called chief psycholgist, even after repeated Notices,

simply disregarded the need for Mr.Annamalai to oberve his religious dietary, which

has lead to Mr.Annamalai to suffer with extensive trauma, depression, anxiety, fear of

death by stroke and or heart attack and many more.Mr.Annamalai also asks this

court to consider the enclosed various express correspondences in support of this

claim, and such correspondences are fully and expressly reincorporated herein by

reference. Plaintiff is asking for $25 Million as damages for this claim.

## B. Federal Tort Claim against United States of America for FBOP officials's "Negligent infliction of emotional distress" of Mr.Annamalai

### 57.

Mr.Annamalai by reference fully and expressly reincorporate the paragraph numbers

1-53 as if they are fully and expressly stated herein.

### 58.

Here the FBOP officials Daniel Sproul, Colette Peters, Nathan simpkins, Brooks, Hottess,
Fields, Stacey Byrum, S.Wallace, Randall Pass, S.Holem negligently caused the plaintiff
to sustain injuries through their negligent acts.Here these officials owes a duty of
"CARE" for the plaintiff and willingly and also appears that knowingly breached
such a duty of "care", which has lead to Mr.Annamalai to suffer various injuries to
his health inclusive of worsening diabetes, high collestral, higher and elevated
A1C level a simple indication and also indisputable fact that, Mr.Annamalai's health
conditions kept on getting injured as well as "physical impacts" caused by
constant "fear" that eating such contaminated and or cross contaminated foods and
as well as foods have come in contact and or close proximate to MEAT items will
lead to committing "known sins" and also a punishment from the God violating such



to understand from the Mr. Aman stay cry to survive every day

Brown, Hottes

Hindu religious mandate of NOT to eat in "any manner" Meat items/food, which has also lead to Post Traumatic stress disorder, anxiety, depression, further went around and also clearly appears to be a contributing factors for the worsening  diabetes. This court is well aware that, the "diabetes is a slow killer" by making the various body parts slowly weakned and also worsened, and takes to death at any time.Mr.Annamalai has suffered an "injury in fact" because of such negligence has caused him to suffer extensive and unberable infliction of emotional distress.Here the named officials all are FBOP officials, and their contact was/is a wanton misconduct. Here those officials acted in an extreme and outrageous conduct and way, intented to inflict severe emotional distress or they knew of the high probability that it would occur and would cause Mr.Annamalai to suffer more emotional distress.They were completely negligent  by disregarding the duty owed by them as mandated by 18 U.S.C. § 4042(a).

59.

Mr.Annamalai has right to practice and choose his religion and to comply the religious diet  according to the mandates of the Hindu faith, by not consuming "in any manner MEAT items". The FBOP officials has substantially burdened in a significant and also appears that forced Mr.Annamalai to choose between his religious practice and adequate nutrition. See HUNAFA ( 7th Circuit's case ) stated as " failure to ensure staff kept pork products separate from pork substitutes, substantially burdened Muslim inmates practice of Religion".See also various correspondences directed to them, which will speaks in volume about the negligence and thereby they have also clearly appears to negligently inflict Mr.Annamalai's emotional distress; and lead to an injury in fact since now, with his worsened  and injured health, he is "living" as a"sick and starved dog"to be" "executed" very soon.Mr.Annamalai is asking for $25 Million as dammages for this claim against United states.

## C. Negligence

60.

Mr.Annamalai by reference fully and expressly reincorporate paragraphs  1-59 as if they are restated herein.

61.

The FBOP staffs Annabell Fields, Dr.Randall Pass, Nathan Simpkins, Daniel Sproul Colette Peters, S.Wallace, Stacey Byrum, S.Holem, Ms.Hottes all appears to be patently negligent in their acts to harm and injure Mr.Annamalai.These officials owes a duty of "CARE" to Mr.Annamalai, and clearly appears to have breached  such a duty and the injuries suffered to Mr.Annamalai and as well as all the "Physical impacts" are/were occured, proximately attributable by that bearch of such officials. conduct in a negligent manner.

Conduct, in a resites manner

Mr.Annamalai is seeking $25 Million damages for such negligence against the defendant United States.

### D. FTCA claim against United States for failure to train the FBOP officials

62.

Mr.Annamalai by reference fully and expressly reincorporate paragraphs 1-61 as if they are fully restated herein.

63.

Here the FBOP officials inclusive of Colette Peters, Daniel Sproul, Nathan Simpkins, S.Wallace, Stacey Byrum, Randall Pass, Annabell Fields,S.Holem, JOHN & DOE 1-10 all appears to have been 'inefficiently and or not adequately trained" to follow and or adhere the mandated rules for the FBOP as noticed in 18 U.S.C. § 4042(A). such "CARE" OWED To Mr.Annamalai has been clearly ,violated, as mandated by the statue itself and such statue shall not be a surprise to any of the FBOP officials as named herein. Here, in the plaintiff's case, the "gross negligence" of these named officials who are all indisputably the employees of the U.S.Department of Justice.Such Gross negligence inflicted for Mr.Annamalai's situation are so pervasive, constant and still continuing.The acts, commissions and or omissions of such named officials in this complaint/ Claim appears to be intentional, and malicious by placing Mr..Annamalai in the "constant starvation" and with zero respect to the sincerely held religious beliefs of the plaintiff per se.

64.

" here " a deficiency in the training program of these named Bureau officials all appears to be closely related to Mr.Annamalai's present injuries and such health and mental complications lead to several "physical impacts" would have been avoided, under a proper training program which clearly appears to be deficient in this identifed respects. Here the Warden and ( Mr.Daniel Sproul ·) and Ms.Colette Peters liable for their own actions and or inactions, even after they were repeatedly placed on notice by Mr.Annamalai about the injuries and also forthcoming injuries because of his inability to "eat" any foods came in contact with MEAT, and Mr.Annamalai was placed in a "forced starvation" for an indefinite time now.In this situation every one of the named defendants ( individuals ) had an "actual knowledge" of the harms would cause to Mr.Annamalai's health because of his chronic medical conditions, inclusive of chronic diabetes, 'if' Mr.Annamalai is not given with "food to eat".At the same token these individuals fully and expressly notified by the plaintiff as such his

inability to observe and maintain his faith and to have foods in complainace with the Hindu faith to avoid " MEAT" totally.However here every one deliberately disregarded such a simple and starightforward as well as indisputable request.Its NOT debate that wheteher Mr.Annamalia shall eat every day or not.Of course he needs to eat to survive and not sentenced to kill him by "starvation tortures" in any means, indeed.If these staffs/officials of FBOP would have recived proper training, Mr.Annamalsi's injuries and harms would have been avoided under program properly initiated by the FBOP which were not deficient in the identifed respect.Most notably Ms.Colette peters and Daniel sproul appears to "failed to train" thes officials as named in this claim appropriately. Such casual connections exists between the failure to supervise or train in violation of the statue 18 U.S.C.§ 4042(a) itself and as well as the BOP's policy and program statement about staff's conduct as noticed in BOP PS

65.

Its generally acknowledged that, if the supervisors ( Daniel Sproul & Colette Peters ) are/were actually aware of the fact that their subordinates are regularly vioating either statutory or the BOP's policy itself then such a supervisor fails to implement a proper program, proper training to be implemented,which all again constitutes deliberate indifference.The repeated correspondences to all of such FBOP staffs as shown in this complaint would simply prove the inadequate training of such officials, since "all" of them totally disregarded Mr.Annamalai's genuine requests.See Evidence numbers __I__ through __I 2__ .

66.

Now Mr.Annamalai is giving more "specific facts" connecting each one of such Bureau's officials to show their inefficient training, lead to Mr.Annamalai's injury in fact as foolows:

(1). Daniel Sproul: He is fully aware of Mr.Annamalai's reqpeated concerns about Mr.Annamalai's inability even to "self select" any meals on any day. Simply to put that, such options were 100% NOT available for the CMU/CTU inmates at all.Because Food trays are coming as already filled in the CMU/ CTU as a prepackage meals from the "MEAT tainted kitchen.

(2). Such a harsh conditions at CMU/CTU placed Mr.Annamalai almost every day in a hunger and thrown him into starvation forceably.

(3). The official Nathan Simpkins ( case manager ) Unit Managers Stacy Byrum and S.Wallace was also well aware of such matters as stated above herein, and they have patently failed to rectify such emergency matter and participated in the process of placing Mr.Annamalai in a "forceable starvation" by their patent inexperienced training of how to address a religious diet for a man of Hindu faith.

(4). The Chaplin S.Holem was met with spoken about given with numerous corres--pondences about the dire need of Religious Hindu diet for Mr.Annamlai.As usual that also went to the deaf's ears, and clearly appears to be the patent failure to address the immediate needs for someone to "eat" and NOt to place an inmate in a forced starvation

(5). The official Colette Peters was also advised expressly by Mr.Annamalai and also Mr.Annamalai's family members have contacted via phone repeatedly Ms.Colette Peters office as well as Mr Daniel Sproul of Mr.Annamalai's "forced starvation". and it clearly appears that, based on an ineffective training of such officials, no one has taken any interest to rectify such an imminent food situation and kept Mr.Annamalai in constnat hunger and to cause an injury in fact.

(6). Dr.Randall Pass as a medical director and also as the doctor for Mr. Annamalai has been repeatedly and expressly and as well as orally advised the dire food conditions of Mr.Annamalai and Mr.Annamalai's inability to recive the religious diet, which all lead to inabilty to control the chronic diabetes. However Dr.Pass simply disregarded such a request and appears to be the ineffective training of himself;and how to address a food situation crossing the debliating condition of chronic injuries to an inmates health like Mr. Annamalai. See several correspondences directed to him as well.The same facts applicable to PA Leslie Brooks also as well.

(7). The Chief Psychologist Annabell Fields also in the same boat like other FBOP officials as shown here.She was always and repeatedly ( orally as well as expressly ) advised about the worsening mental health conditions of Mr.Annamalai about anxiety, depression PTSD all steming from the extensive infliction of emotional distress by the FBOP staffs as noticed herein, since Mr.Annamalai is patently prevented from observing HIS SINCERELY HELD Hindu Religious beliefs to avoid any food cross contaminated, contaminated or came in any kinds of contact with "MEAT" and "MEAT by-Products".However Ms.Fields did not care about such "forced starvation" which has caused severe emotional, mental physical imapacts and caused to worsen Mr.Annamalai's chronic health conditions, and appears to left Mr.Annamalai to die by forced starvation and also by the repeated assaults on the sincerely held religious beliefs of Mr.Annamalai.

The JOHn & DOE 1-10 officials also conducted in the same manner as demosnstarted herein. These Bureau officials has a pervasive mistreatment culture even not to follow the Bureau'spolicy about how to serve a food for a "faithful inmate" like Mr.Annamalai.Respectfully any and all food service matters are only on the Bureau's papers and these officials are not trained to follow and or respect their own Bureau's policy and there by caused to harm and injure the plaintiff which all lead to an injury in fact now.

Please see various correspondences directed to these staffs individually also. Mr.Annamalai is asking for $25 Million as damages for this claim.

<u>Claim Number- 7</u>

<u>Plaintiff's " MEDICAL NEGLIGENCE"claim against Randall Pass, Leslie Brooks for failing to provide adequate medical diet/care for Mr.Annamalai's worsening chronic diabetes and other chronic health conditions and also pursuant to his sincerely held religious beliefs</u>

67.

Mr.Annamalai by reference fully and expressly reincorporate paragraphs numbers 1-66 as if they are fully restated herein.

appear to be the inefficient training he had
as med nature

Daniel

deprivation od

and

Eighth Amendments Deliberate indifference and medical negligence Claim against Dr. Mau & C. Brown for failed to inspect/ensure medical diet in compliance with Mr. Ampuero's Chinua Health conditions and under his sincerely held Religious beliefs

officials are

See FSOP p.5

medical negligence Claim

68.

The Facts are very straightforward.Mr.Annamalai is a chronic care inmate with worsening Diabetes ( with A1C 9.5- a death level ), cholestral, hypertension, synus, prostate and many more.Without any debate and also as a common sense, Mr.Annamalai needs to have a "diet" not only in compliance with his religious beliefs and or otherwise also shall be in compliance with his medical conditions. indeed, Mr.Annamalai never and ever allowed and or issued and or ordered by the medical ( Dr.Randall Pass or Leslie Brooks ) to receive medical diet.How come for ¬chronic diabetic inmate like Mr.Annamalai with worsening diabetic conditions 'forced" him to eat not only MEAT contaminated food trays, whereas almost every day "BREADS, POTATOES, and also with "high carbohydrate" items.Almost 80% of ( cakes etc) the items served on the food trays at USP-MARIOn and as well as at FCI-OXFORD are all dead against foods for a Chronic care" inmates like Mr.Annamalai .

69.

Several correspondences towards Dr.Randall Pass and Dr.Leslie Brooks are/were simply disregarded to recive a food trays in compliance with Mr.Annamalai's sincerely held religioius beliefs as well as in compliance with Mr.Annamalai's chronic health conditions. The treatment as recived in such a manner was/is nothing but unusual and cruel.Its all begs a simple and a straightforward question as follows:

HOW COME A MEDICAL PROFESSIONAL KNOWINGLY AND BRAZENLY DISREGARD THE REQUEST FOR A MEDICAL DIET FOR A CHRONIC HEALTH CONDITION INMATE LIKE MR.ANNAMALAI?

70.

Dr Pass Dr Brooks were indifferently treated Mr.Annamalai in violation of the eighth amendment, and caused to inflict "cruel and unusual punishments" on Mr.Annamalai. Here, Dr.randall Pass, Leslie Brooks and JOHN & DOE 1-10 are all FBOP officials and are all liable under the eighth Amendment violation towards thecruel and unsual punishments clause, sincce it clearly appears that, these officials have "knowingly failed to protect Mr.Annamalai's ¬chronic health care conditions, by simply failed to take necessary actions to provide with 'medical diets' and also diets to comply with Mr.Annamalai's health and religious conditions. ( As a matter of fact⁻Mr.Annamalai was held for approximately 19 months to face his 'mockery resentencing' in a private jail "GEO" at Love Joy Georgia between the yeras 2020-2021. To comply with the sincerely held religious beliefs the "DOCTOR" ( medical provider" and the Nurses took immediate action to make sure that Mr.Annamalai do not receive any "MEAT" and "MEAT by products' either contaminated or cross contaminated or come in any contacts with MEAT, by procuring "Hindu meals" from some outside vendors ).

71.

These Bureau officials simply disregared the excessive risk to Mr.Annamalai's chronic care and as well as his sincerely held religious beliefs.'These officials in fact was actually informed about "a specific, credible and imminent risk of serious harms to Mr.Annamalai's physical health as well as mental health, and patently disregared such notices.See, Evidences_____.Such express correspondences about such specific threats to Plaintiff's , although they were the treating doctors for Mr.Annamalai for a long period at USP-=MARION.Here the plaintiff is particulary vulnerable.Here such meeical professionals imposed a substantial burden on the plaintiff's diet ( both medical and religious ) in compliance with the plaintiff's chronic health conditions as well as the religious components attached to his diets.These officials actions or inactions were 'not' simply incidental, or inconvenience on the Religious exercise or to maintain an appropriate health condition for the plaintiff.Their actions and or inactions significantly hampered the plaintiff religious practice combined with the inability of the plaihtiff to receive a diet every day basis in compliance with his worsening chronic diabetes conditions.Finally now the plaintiff endured an injury in fact.These officials acted with deliberated indifference towards the plaintiff's present and as well as future health well being.They have harmed and injured Mr.Annamalai deliberately in an indifferent manner, with "subjective knowledge" of such injuries being inflicted on Mr.Annamalai.

Mr.Annamalai is asking a $25 million danages for this claim.

## Claim Number-8
### Declaratory Relief against Colette Peters, Federal Bureau of Prisosn, Daniel Sproul and present warden  of FCI-OXFORD

72.

Mr.Annamalai fully and expressly reincorporates paragrapghs 1-71 as if they are fully restated herein by reference.

73.

The plaintiff seeks an order from this court declaring that the plaintiff and those who are the members of the "Hindu" faith, be provided by the FBOP with a Religious diet " common fare" in full compliance with the Hindu faith, and also taking into considerations of the Hindu faith, regarding the food preparation.Such an would be just, fair and also will be in the best interest of justice, indeed.

## Claim number 9

### Civil Conspiracy claim against defendants Daniel sproul, S.Holem, Stacey Byrum Hottess, Randall Pass, S.Wallace, Nathan simpkins, Annabell Fields & JOHN & DOE 1-10

74.

Mr.Annamalai by reference fully and expressly reincorporate paragrapghs 1-73 as if they are fully restated herein by reference.

75.

The named defendants for this cause of action of civil conspiracy had an agreement between each one of them to accomplish either an unlawful purpose by an unlawful means or a lawful purpose by an unlawful means by committing several torts against Mr.Annamalai.They are inclusive of preventing his ability to receive and also adhere the sincrely held Hindu religious beliefs and or exercises attached to such beliefs.Also either knowingly or an negligent manner caused to harm and injure Mr.Annamalai emotionally, mentally and as well as physically by placing him on the "forced starvation" and caused an injury in fact for Mr.Annamalai.The agreement of conspiracy caused several injuries to the physical and mental health of Annamalai. Mr.Annamalai needs to suffer indiscrimination being a man of Hindu faith by comparing a special treatments being given to Jewish and as well as Muslim inmates to adhere their religious exercises and of course not for Mr.Annamalai.Through the continued civil conspiracy the defendants as shown here caused to violate the Religious freedom and restroration act, Religious land use and institutionalized persons Act, Violating the Free Exercise clause of the First amendment protection given by the United States Constitution, violation of the Establishment clause, Equal protection guranteed by the United Staes constitution.Mr.Annamalai has suffered, harmed, injured and still suffering after math tortures he has endured'in the hands of these named defendants.Their conduct of conspiracy to harm and injure Mr.Annamalai was so brutal by also assaulting the sincerely held religious beliefs of Mr.Annamalai, left him with present anxiety, depression, nightmares, constant fear and etc.Mr.Annamalai is asking for $25 million as compensatory damages for this claim.

### REQUEST FOR INJUNCTIVE RELIEFS

76.

Mr.Annamalai by reference fully and expressly reincorporate paragrapghs 1-75 as if they are fully restated herein by reference.

77.

Mr.Annamalai moves this court for an injunctive relief and or a Temporary and as well as permanent restraining order against the Officials Daniel Sproul, the "current Warden of FCI-OXFORD, Federal Bureau of Prisons, Colette Peters, who is the "boss" of these persons, with an order to initiate a Hindu religious diet in compliance with the Hindu faith avoiding MEATS and any kinds of MEAT products and most especially such a meal to be prepared in a facility wherewhich NO meat in any kinds are cooked and or processed.Such an injunction is very appropriate in these given circumstances, wherewhich this court shall step in to protect Annamalai, who is presently under "forced starvation" and he "will NOT" make up for a long time with these types of constant hunger, mental, emotional and as well as physical tortures on a day to day basis.The communication with and over hours of discussions with the FCI-OXFORD's Chaplin does not go anywhere and he has also "encouraged" Mr.Annamalai to approach the court to get the relief.As indicated by chaplin, the religious diet policy is only on the papers about how the NO =FLESH meals to be prepared and served and NOT on a practical matter happening and he has no control over the "big bosses" of the FBOP.

78.

At the present time an injunctive relief is warranted and as well as demanding with an indisputable fact that, Mr."ANNAMALAI SHALL EAT TO SURVIVE" , combined with his serious chronic health conditions.Without a proper diet he will "die as an orphan who has been tortured without food and placed in a forced starvation".

## A. Mr.Annamalai will suffer irreparable harms in the interim period, prior to the Final resolution of his claims as demonstrated in this complaint

79.

Mr.Annamalai is a "living man" with flush, bones, blood like these bureau's officials. There is no debate about whether Mr.Annamalai shall eat or not.Of course he needs to eat and he shall not be tortured and killed by the bureau's officals by the continued and forced starvation per se.Indisputably Mr.Annamalai is a chronic health care imate, with mile long of chronic issues, inclusive of Diabetes, high Collestral, hyper tension, pro state, psynus and etc.Because of his inability to receive the Hindu faith mandated dietary to avoid the meals not to be consumed in any contacts with the MEAT and MEAT by products, made his chronic health conditions worst which also appears to be partially has contributed to his mental health which is declining and most notably the Bureau itself has "updated Mr.Annamalai as a "CARE LEVEL -II MENTAL HEALTH INMATE" as we speak

80.

The diabetes as known to almost even to the General public's awareness and also a common sense, needs to have proper diet, proper medication and proper exercise. Having said, how could Mr.Annamalai can avoid an irreparable harms as occuring as we speak without a proper diet? Several harms occurs by the worsening diabets can not be reverted back and once such harms occured and they are permanent.Say about such indisputable irreparable harms already occuring which are inclusive of eye vison problems ( without eye glasses, mr.Annamalai cannot see anything far sighted lost most of the body hairs, constant nerves pain ( diabetic nerves pain ), and etc. The irreparable harms can be easily minimized by an injunctive order towards the Warden of FCI-OXFORD to immediately arrange "Hindu meals" for the plaintiff on a day to day basis and which could be very easily arranged from HINDU meals vendors, and Mr.Annamalia is ready, willing and able to assist the chaplin of FCI-OXFORD to direct the right HINDU MEALS vendors who sells and supplies HINDU MEALS which are completely free from any kinds of MEAT items.

## B.The traditional legal remedies would be inadequate

81.

This present civil rights complaint hasmainly two parts.One is about the monetary compensatory reliefs for various harms caused by the defendants in personal and also official capacities.The second one is to achieve a simplest goal of Mr.Annamalai shall get fed "every day".Mr.Annamalai shall eat on a day to day basis, and he shall not be thrown in to an indefinite and forced starvation by any means.The traditional legal remedies would be patently inadequate by taking into consideration of continuing harms, and prejudices as occuring as we speak.Indeed several of the claims in this action will take years to get resolved finally, and no means the Plaintiff will be even alive for years to come in the BOP's custody by enduring the forced starvation and also by considering his worsening chronic health conditions comparing with his CARE LEVEL -II_ Mental health inmates, who obviously attempted suicide in the FBOP's custody by the continuing tortures,he has endured so far and infliction of emotional distress, and 'nothing' has stopped as we speak and of course still continuing.An equitable relief with injunctive relief will at least allows Mr.Annamalai to "live and eat" for some more time.

## C. Mr.Annamalai's claims have some liklihood of success as presented

82.

Mr.Annamalai as a non-native English person, and English is not his first language and as a pro se petitioner, has presented viable claims via this civil rights action.

He also further strongly trust that his various claims as presented has some liklihood of success on the merits as presented in this record.This court can consider such factors also in granting the injunctive reliefs.

## D. The Defendants would NOT suffer any irreparable harms  by granting the requested injunctive reliefs for Mr.Annamalai

83.

The requested injunctive relief of providing immediately with meals in compliance with Hindu faith from some outside vendors even remotely will not harms the defendants.Its after all buying such Hindu meals from the outside vendor and as indicated Mr.Annamalai will 100% cooperate with the present FCI-OXFORD's chaplin to effectively achieve such goals.There is no issue with any kinds of harms for the defendants here, since they have nothing to loose, and they are not the ones "forced in to starvation" and or to "get killed slowly by the chronic health conditions". Respectfully Mr.Annamala do not see in any means any kinds of harms to the defendants by Mr.Annamalai is being provided with the meals every day in compliance with his Hindu religious beliefs.

## E. Granting an injunctive reliefs also supports Public interest

84.

Mr.Annamalai has broughtforth a very good RFRA claim in this petition..Here the analysis of the requested, begins and ends with the likliहood of success on the merits of the RFRA claim and or RLUIPA claims..On the strength of those claims alone a preliminary injunctive relief is warranted.Here the RFRA claim and or RLUIPA claims are statutory, indeed RFRA protects First amendment free -exercise rights, and in "first amendment cases", 'the liklihood of success on the merits will often be the determinative factor" ACLU of III Vs. Alvarez, 679 F.3d 583, 589 ( 7th Cir. 2012) ( quoting Joelner Vs. Village of Washington Park, III, 378 F.3d 613, 620 ( 7th Cir 2004 )."This is because the 'loss'of First Amendment Freedoms..... unquestionably constitutes irreparable injury..." ( quoting Elrod Vs. Burns, 427 U.S. 347, 373, 96 S.CT 2673, 49 L.ED 2d 647 ( 1976 )(plurality Opinion ).Moreover once the moving party establishes a likilihood of success on the merits, the balance of harms "normally favors granting preliminary injunctive relief", because "injunctions protecting First Amendment freedom  are always in the public interest" ( quoting Christian Legal society Vs. Walker; 453 F.3d 653, 859 ( 7th Cir. 2006 )

85.

***Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Religion > Free Exercise of Religion***

The religious freedom guaranteed by the Free Exercise Clause of the First Amendment does not require religious exemptions from facially neutral laws of general applicability.

***Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Religion > Free Exercise of Religion***

Neutral laws of general applicability need only satisfy the basic test for rationality that applies to all laws; if a law incidentally burdens the exercise of religion, the Constitution does not require an exemption.

***Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Religion > General Overview***

See U.S. Const. amend. I.

***Civil Rights Law > Civil Rights Acts > Religious Freedom Restoration Act***

The Religious Freedom Restoration Act of 1993, 42 U.S.C.S. § 2000bb et seq., creates a broad statutory right to case-specific exemptions from laws that substantially burden religious exercise even if the law is neutral and generally applicable, unless the government can satisfy the compelling-interest test.

***Civil Rights Law > Civil Rights Acts > Religious Freedom Restoration Act***

See 42 U.S.C.S. § 2000bb-1.

***Civil Rights Law > Civil Rights Acts > Religious Freedom Restoration Act***
***Governments > Legislation > Statutory Remedies & Rights***

Any person whose religious practices are burdened in violation of the Religious Freedom Restoration Act of 1993, 42 U.S.C.S. § 2000bb et seq., may assert that violation as a claim or defense in a judicial proceeding and obtain appropriate relief.

***Civil Rights Law > Civil Rights Acts > Religious Freedom Restoration Act***
***Governments > Legislation > Effect & Operation > Prospective Operation***
***Governments > Legislation > Effect & Operation > Retrospective Operation***

The Religious Freedom Restoration Act of 1993, 42 U.S.C.S. § 2000bb et seq., applies retrospectively and prospectively to all federal law, and the implementation of that law, whether statutory or otherwise, and whether adopted before or after its effective date. 42 U.S.C.S. § 2000bb-3(a). Prospective application is qualified by the rule that statutes enacted by one Congress cannot bind a later Congress, which remains free to repeal the earlier statute, to exempt the current statute from the earlier statute, to modify the earlier statute, or to apply the earlier statute as modified.

***Civil Rights Law > Civil Rights Acts > Religious Freedom Restoration Act***
***Constitutional Law > Bill of Rights > Fundamental Freedoms > General Overview***
***Evidence > Procedural Considerations > Burdens of Proof > Allocation***
***Evidence > Procedural Considerations > Burdens of Proof > Burden Shifting***

Once a claimant under the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C.S. § 2000bb et seq.. makes a prima facie case that the application of a law or regulation substantially burdens his religious practice, the burden shifts to the government to justify the burden under strict scrutiny. Congress's express decision to legislate the compelling interest test indicates that RFRA challenges should be adjudicated in the same manner as constitutionally mandated applications of the test. Thus, in RFRA litigation, as in First Amendment litigation, the burdens at the preliminary injunction stage track the burdens at trial.

86.

*Civil Rights Law > Civil Rights Acts > Religious Freedom Restoration Act*
*Civil Rights Law > Prisoner Rights > Freedom of Religion*
*Governments > Legislation > Statutory Remedies & Rights*

The term "exercise of religion" in the Religious Freedom Restoration Act of 1993, 42 U.S.C.S. § 2000bb et seq., is now defined by cross-reference to the definition of "religious exercise" in the Religious Land Use and Institutionalized Persons Act, 42 U.S.C.S. § 2000cc et seq.: The term "religious exercise" includes any exercise of religion, whether or not compelled by, or central to, a system of religious belief. 42 U.S.C.S. §§ 2000cc-5(7)(A), 2000bb-2(4). This definition is undeniably very broad, so the term "exercise of religion" should be understood in a generous sense.

*Civil Rights Law > Civil Rights Acts > Religious Freedom Restoration Act*
*Governments > Legislation > Interpretation*

The Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C.S. § 2000bb et seq., does not define "person." This brings the Dictionary Act into play. The definition there expressly includes corporations: In determining the meaning of any Act of Congress, unless the context indicates otherwise, the word "person" includes corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals. 1 U.S.C.S. § 1. By operation of this omnibus definition, the term "person" in RFRA includes corporations, unless the context indicates otherwise.

*Business & Corporate Law > Corporations > General Overview*
*Civil Rights Law > Civil Rights Acts > Religious Freedom Restoration Act*
*Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Religion > Free Exercise of Religion*

The use of the corporate form and the associated legal attributes of that status-think separate legal personhood, limitations on owners' liability, special tax treatment-do not disable an organization from engaging in the exercise of religion within the meaning of the Religious Freedom Restoration Act of 1993, 42 U.S.C.S. § 2000bb et seq., (or the Free Exercise Clause, for that matter).

It's well understood that the Free Exercise Clause protects first and foremost, the right to believe and profess, but also the right to engage in religiously motivated conduct. This doctrine reflects the original understanding of the right. The right to believe and profess is absolute. Religiously motivated conduct is necessarily subject to some regulation for the essential public good. Free-exercise problems usually arise when a law, regulation, or some action of a public official interferes with a religiously motivated practice, forbearance, or other conduct. These claims present in distinct ways, reflecting different dimensions of the right.

The Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C.S. § 2000bb et seq., requires the government to shoulder the burden of demonstrating that applying the contraception mandate is the least restrictive means of furthering a compelling governmental interest. 42 U.S.C.S. § 2000bb-1(b). The U.S. Supreme Court has instructed the court to look beyond broadly formulated interests justifying the general applicability of government mandates and scrutinize the asserted harm of granting specific exemptions to particular religious claimants.

*Civil Rights Law > Civil Rights Acts > Religious Freedom Restoration Act*
*Evidence > Procedural Considerations > Burdens of Proof > Allocation*

Under the version of strict scrutiny in the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C.S. § 2000bb et seq., the government must establish a compelling and specific justification for burdening claimants. The compelling-interest test generally requires a "high degree of necessity." The government must identify an actual problem in need of solving, and the curtailment of the right must be actually necessary to the solution. In the free-exercise context, only those interests of the highest order and those not otherwise served can overbalance legitimate claims to the free exercise of religion. In this highly sensitive constitutional area, only the gravest abuses, endangering paramount interests, give occasion for permissible limitation. The regulated conduct must pose some substantial threat to public safety, peace, or order. Finally, a law cannot be regarded as protecting an interest of the highest order when it leaves appreciable damage to that supposedly vital interest unprohibited.

87

"Exercise of religion" means any exercise of religion, whether or not compelled by, or central to, a system of religious belief. 42 U.S.C.S. § 2000cc-5(7)(A). At a minimum, a substantial burden exists when the government compels a religious person to perform acts undeniably at odds with fundamental tenets of his religious beliefs. But a burden on religious exercise also arises when the government puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.

*Civil Rights Law > Civil Rights Acts > Religious Freedom Restoration Act*
*Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Religion > Free Exercise of Religion*

Construing the parallel provision in the Religious Land Use and Institutionalized Persons Act, 42 U.S.C.S. § 2000cc et seq., the United States Court of Appeals for the Seventh Circuit has held that a law, regulation, or other governmental command substantially burdens religious exercise if it bears direct, primary, and fundamental responsibility for rendering a religious exercise effectively impracticable. The same understanding applies to claims under the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C.S. § 2000bb et seq. Importantly, the substantial-burden inquiry does not invite the court to determine the centrality of the religious practice to the adherent's faith; RFRA is explicit about that. And free-exercise doctrine makes it clear that the test for substantial burden does not ask whether the claimant has correctly interpreted his religious obligations. Indeed, that inquiry is prohibited. In this sensitive area, it is not within the judicial function and judicial competence to inquire whether the adherent has correctly perceived the commands of his faith. Courts are not arbiters of scriptural interpretation. It is enough that the claimant has an "honest conviction" that what the government is requiring, prohibiting, or pressuring him to do conflicts with his religion.

*Civil Rights Law > Civil Rights Acts > Religious Freedom Restoration Act*

The substantial-burden test under the Religious Freedom Restoration Act of 1993, 42 U.S.C.S. § 2000bb et seq., focuses primarily on the intensity of the coercion applied by the government to act contrary to religious beliefs. Put another way, the substantial-burden inquiry evaluates the coercive effect of the governmental pressure on the adherent's religious practice and steers well clear of deciding religious questions.

To support this simple and straightforward injunctive relief, Mr.Annamalai is giving the following suggestions to the court in a respectful and humble manner to tailor the injunctive reliefs in a narrow manner to achieve the goals and also to stand with the free exercise clause of the U.S.Constitution, RFRA and RLUIPA as well:-

88

The current warden of FCI-OXFORD who has the custody of Mr.Annamalai and also the "privy" of the warden of USP-MARIOn, an employee of FBOP and U.S.Department of Justice SHALL immediately appoint the Chaplin of FCI-OXFORD, to work out an immediate remedy to situate Mr.Annamalai's Meals on a day to day bais in compliance with Hindu Religion and also in combination of Mr.Annamalai's sincerely held religious beliefs, from an outside vendor wherewhich such meals/foods are never and ever came in contact with MEAT and or MEAT products.Such an action shall be accompanied "within 7 days" from the entering of the injunctive relief.
& Annamalai SHALL NOT be subjected to any kinds of Retaliation directly and or indirectly in any means, for asking this relief.

## VI. Conclusion & Relief Sought

WHEREFORE based on the facts and evidences as ̇ in the paragrapghs 1-88 the victim-plaintiff-petitioner Annamalai a former Hindu High Priest and always held his sincerely held religious beliefs asking respectfully for the following reliefs.

(1). Compensatory reliefs for the claims as noticed in each claims;

(2). Declaratory relief as sought in the claim number-8;

(3). An injutive relief as sought in the claim number 10;

(4). A request for a Jury Trial for the matters can be tried under a jury ;

(5). An appointment of a counsel to represent Mr.Annamalai from here onwards. ( a separate motion is also simultaneously being filed with it );

(6). Allow with additional time, if any of the claims are not well pleaded to amend the complaint accordingly with more facts and etc.

(7). Any more reliefs also be granted with the ones as expressly sought herein to do complete Justice in Equity for Mr.Annamalai.

Respectfully Submitted this day of  April 26, 2024.

Annamalai Annamalai
P.O.Box-1000
FCI-OXFORD, WI-53952

## VII. Verification under penalty of perjury pursuant to 28 U.S.C.§ 1746

I Annamalai Annamalai Verifies under penalty of perjury that, the foregoing is True and Correct.
Executed on: 04.26.2024

Annamalai Annamalai, Petitioner

87.

"Exercise of religion" means any exercise of religion, whether or not compelled by, or central to, a system of religious belief. 42 U.S.C.S. § 2000cc-5(7)(A). At a minimum, a substantial burden exists when the government compels a religious person to perform acts undeniably at odds with fundamental tenets of his religious beliefs. But a burden on religious exercise also arises when the government puts substantial pressure on an adherent to modify his behavior and to violate his beliefs.

*Civil Rights Law > Civil Rights Acts > Religious Freedom Restoration Act*
*Constitutional Law > Bill of Rights > Fundamental Freedoms > Freedom of Religion > Free Exercise of Religion*

Construing the parallel provision in the Religious Land Use and Institutionalized Persons Act, 42 U.S.C.S. § 2000cc et seq., the United States Court of Appeals for the Seventh Circuit has held that a law, regulation, or other governmental command substantially burdens religious exercise if it bears direct, primary, and fundamental responsibility for rendering a religious exercise effectively impracticable. The same understanding applies to claims under the Religious Freedom Restoration Act of 1993 (RFRA), 42 U.S.C.S. § 2000bb et seq. Importantly, the substantial-burden inquiry does not invite the court to determine the centrality of the religious practice to the adherent's faith; RFRA is explicit about that. And free-exercise doctrine makes it clear that the test for substantial burden does not ask whether the claimant has correctly interpreted his religious obligations. Indeed, that inquiry is prohibited. In this sensitive area, it is not within the judicial function and judicial competence to inquire whether the adherent has correctly perceived the commands of his faith. Courts are not arbiters of scriptural interpretation. It is enough that the claimant has an "honest conviction" that what the government is requiring, prohibiting, or pressuring him to do conflicts with his religion.

*Civil Rights Law > Civil Rights Acts > Religious Freedom Restoration Act*

The substantial-burden test under the Religious Freedom Restoration Act of 1993, 42 U.S.C.S. § 2000bb et seq., focuses primarily on the intensity of the coercion applied by the government to act contrary to religious beliefs. Put another way, the substantial-burden inquiry evaluates the coercive effect of the governmental pressure on the adherent's religious practice and steers well clear of deciding religious questions.

88

To support this simple and straightforward injunctive relief, Mr.Annamalai is giving the following suggestions to the court in a respectful and humble manner to tailor the injunctive reliefs in a narrow manner to achieve the goals and also to stand with the free exercise clause of the U.S.Constitution, RFRA and RLUIPA as well:-

The current warden of FCI-OXFORD who has the custody of Mr.Annamalai and also the "privy" of the warden of USP-MARIOn, an employee of FBOP and U.S.Department of Justice SHALL immediately appoint the Chaplin of FCI-OXFORD, to work out an immediate remedy to situate Mr.Annamalai's Meals on a day to day bais in compliance with Hindu Religion and also in combination of Mr.Annamalai's sincerely held religious beliefs, from an outside vendor wherewhich such meals/foods are never and ever came in contact with MEAT and or MEAT products.Such an action shall be accompanied "within 7 days" from the entering of the injunctive relief. & Annamalai SHALL NOT be subjected to any kinds of Retaliation directly and or indirectly in any means, for asking this relief.

## VIII. Certifiacte of Service

Mr.Annamalai verifies and certifies that this document is caused to be mailed to this court , First class  mail, postage being prepaid, by invoking the prison mail box rule.

Respectfully Submitted this day of  April 26, 2024.

Annamalai Annamalai

P.O.Box-1000:OXFORD:WI-53952

## Chapter 4. RELIGIOUS DIET PROGRAM

## 1. CERTIFIED FOOD

The Certified Food Menu, which includes the approved menu and product specifications, will be used for food procurement and meal service at all institutions. Certified Food Menu data is kept at the national level by the NFSA and available under the Food Service Branch on the Bureau intranet site. When updates are made to Certified Food Menu data, the NFSA notifies the National Chaplaincy Administrator (NCA), RFSAs and FSAs via intra-agency email. Any changes to the national Certified Food Program, to include operational procedures, will be approved by the NFSA.

a.  **Menu Review.** The Certified Food Menu is reviewed at least annually to assess responsiveness to inmate eating preferences, operational impact, product pricing, and nutritional content.

During the second quarter each fiscal year, the NFSA will initiate a survey of inmates to determine eating preferences. At that time the RFSA will also request input from each institution to ensure all Food Service employees have the ability to provide input into the menu update process (see Chapter 1, Section 10, Employee Meetings). The review and update process is a collaborative effort with involvement of the National Food Service Branch, RFSAs, and institutional FSAs.

A National Menu Advisory Group will meet to determine any changes to the Certified Food Menu and Specifications. The Advisory Group will involve the National Food Service Branch, Regional Food Service Administrators, and any additional employees at the discretion of the NFSA.

The updated menu data to include the menu and product specifications are available under the Food Service Branch on the Bureau intranet site by July 20 each year and go into effect the first full week in October.

The NFSA will maintain a feedback page on the Bureau intranet site to collect information from all employees concerning changes to the Certified Food Menu.

b.  **Menu Nutritional Analysis.** Following the annual menu update and before the updated menu is implemented, a nutritional analysis is conducted by a Registered Dietitian to ensure the Menus consider the Dietary Reference Intakes (DRIs) developed by the Institute of Medicine of the National Academy of Sciences.

4700.07    2/16/2024

EVIDENCE NO.1

ANNAMALAI, ANNAMALAI 56820379

- Beverages from dedicated sealed dispensing equipment, individually packaged beverage, or instant beverage powder is provided to be reconstituted by the inmate.
- When ordered by the Warden, due to packaging that may be a security concern, food may be removed from an individual container and placed in a covered or wrapped disposable container to serve.

Any time food is removed from the original manufacturer's packaging as authorized above, care should be given to ensure the religious integrity of the product. Only disposable single-use utensils (serving spoons, plates, cups, etc.) and single-use disposable plastic gloves will come into direct contact with Certified Food when handling is authorized.

e. **Participation.** The FSA ensures procedures are in place to provide a Religious Diet participant list and production worksheet to Food Service employees.

Inmates participating in the Certified Food Component are not authorized to consume mainline or hot bar food items; however, they may consume items from a salad bar (where salad bars are part of the Food Service program), knowing that salad bar items may not meet their religious dietary needs. Violations will be reported as required by the Program Statement **Religious Beliefs and Practices.**

## 2. NO-FLESH OPTION

A no-flesh protein option will be provided at both noon and evening meals whenever a main entree containing flesh is offered. No-flesh production requirements will be determined by the FSA.

Vegetables and starches seasoned with flesh will have an alternate no-flesh option.

## 3. ANNUAL CEREMONIAL MEALS

The Religious Ceremonial Menu is derived from the National Menus and constitutes the mainline meal available to all inmates. The Chaplain will consult with the Food Service Administrator to develop the menu for each ceremonial or commemorative meal at least 45 days before the scheduled date of the observance. All ritual/traditional food items will be approved and funded by Chaplaincy Services, procured by the Food Service department, and served only to ceremonial meal participants. No other foods are authorized for ceremonial meals. Inmates participating in the Certified Food Menu will receive the Certified Food Menu and not participate in the food from mainline for the ceremonial meal.

4700.07    2/16/2024

ANNAMALAI, ANNAMALAI 56820379

Nutritional analyses are certified in writing by a Registered Dietitian.

Pepper may be offered as a condiment, however, salt or salt containing seasonings may not be offered in inmate dining areas or on satellite feeding trays.

If the Certified Food Menu is changed substantially after the initial nutritional analysis is completed, the analysis is verified by a Registered Dietitian.

c. **Menu Changes.** Planned changes or substitutions to the approved Certified Food Menu or product specifications will not be made at the local or regional level, although an alternate menu may be used when authorized by policy (see Chapter 6).

If unplanned menu changes are required due to extenuating circumstances such as late delivery, temporarily inoperative equipment, etc., Food Service employees, including the Cook Supervisor preparing the meal, may make necessary substitutions of nutritionally equivalent Certified Foods and ensure managers are aware an unplanned change was required. In most cases substitutions on the Certified Food Menu will require substituting an entire meal on the menu with another meal, with the exception of bread, fruit, beverages, and condiments. Refer to the Food Service Branch on the Bureau intranet site for additional guidance.

d. **Certified Food Procedures.** There are two components within the Certified Food Program: certified kosher and certified halal. Prepared foods purchased for use on the Certified Food Menu will be certified by a nationally accepted Orthodox Kashrut supervision service or World Halal Food Council (WHFC) member (only items indicated by an "H" on the posted menu require this standard for halal items). Access the Food Service Branch on the Bureau intranet site for Religious Certification reference material. In addition to the Kashrut certification, bread, margarine, potato chips, vegetable juice, salad dressing, ketchup, and mustard used for the Certified Food Menu must be Certified Parve meaning they are certified to contain neither meat nor dairy products.

Prepared foods (except bread and beverages as detailed immediately below) will be procured and served in sealed individual serving packages marked with the appropriate Religious Certification (see religious diet specifications for list of required items). Any item to be heated is double-wrapped and sealed in a package that may be heated in a conventional or microwave oven.

Nothing cut, processed, prepared, or served from a container is offered except:

- Loaf bread, which may be served directly from a package that contains the Kosher Parve certification or removed from that same package and packaged by servers in a disposable single-use sealable plastic bag immediately before service.

4700.07    2/16/2024

ANNAMALAI, ANNAMALAI 56820379

22

<u>CONFIDENTIAL & SENSITIVE</u>                August 16th 2022.

From: Mr.Annamalai Annamalai # 56820-379

To:    Dr.Randall Pass, Leslie Brooks

<u>Ref: Request for my Medical diet in compliance with my Hindu faith</u>

Dear Sir/Madam:

 How are you.I have made several oral requests and also brought about my starvation forced by this institution, by not providing a diet in compliance with my present chronic medical conditions combined with my sincerely held Religious beliefs.

    To make the story short, I cannot and I shall not eat any food items in contact with Beef MEAT and or contaminated or cross contaminated with MEAT per se, as per my sincerly held Hindu Religious beliefs and most notably MEAT is forbidden in my Hindu faith, per se.

YOU both a s a medical personnels and knows about my chronic diabetic conditions that, the "good control over diabetes needs without any disputes 1) Medicine 2) diets 3) Exercise/work outs. Please tell me how you would support the food which  I am presently receiving via "already packed trays" ( like a SHU trays ) at this cmu/ctu would be in the compliance of my present chronic health care.As a matter of fact" I do not have any kinds of self select menu option available" at CMU/CTU Pers se, since I am getting a prepacked trays.I am getting almost every day "potatoes, breads, and high carb diets" all are very poisnous to my present chronic diabetes conditions.Secondly, I can not eat MEAT and most of the days I receive MEAT trays at CMU/CTU I go starving with constant hunger the whole night.

Further, the food which I am receiving now, all are cooked at the same place the MEAT is also prepared by using the same plates, trays utencils, spoons and also by most of the same kitchen inmates-workers who absolutely has no training and even aware of how to prepare a religious diet-meal as per the Hindu faith standard and also a man of Hindu Faith like me, who I always adhered a strict Hindu faith, and not to say that, I was a former Hindu High Priest, before my incarceration too.

I need you step in immediately to arrange a tray at CMU/CTU  for me every day in compliance with my chronic diabetic conditions as well as in compliance with my sincerely held Hindu Religious beliefs.I would highly appreciate such a gesture for you all.I do not want to be placed in a "forced starvation" by YOU as well.Please understand that, I am also a "human" like you and I need to eat to survive. Thank you and God Bless you.

Very Truly,                                CC; To all of the persons as named
                                          herein, by hand delivery of copies.

Annamalai. Annamalai

                    Page 1 of 1                          Evidence no.2

February 22, 2023

From: Mr.Annamalai Annamalai, D-Unit USP-MARION, Illinois #56820-379

To:- Chaplin Holem, Ms.Byrum, Mr.Wallace, Ms.Hottess, Dr.Fields, Dr.Brobks, Dr.R.Pass, Nathan Simpkins, Kathy Hill,Mr.Travis, Mr.Sproul

Ref: My several written correspondences  & oral communications with you.

SUB: Ask for mercy-Ask for "FOOD TO EAT"

Dear Sir/Madam:

today I as a "beggar" "BEG" for food.I am in "forced starvation" and I need food to eat.I can not buy my food -meal from the commissary either, since the USP-MARION Commissary does not sell any meals indeed. What shall I do sir/madam? Would you expect me to stay and "live" with these constant and forced starvation? Please ask a question to YOU ALL; since every one of you as noticed in this document fully aware of the deprivation of my religious dietary needs in compliance with my sincerely held Hindu Re;igious beliefs and as well as also in compliance with my health conditions.These events and continued tortures I am enduring places me in extensive and unbearble emotional distress and "harming & Injuring" my physical health and also has inflicted my emotional distress in an exorbitant manner.

Please fix my meals situation immediately and I would highly appreciate your actions.

Thank you and God Bless you all.

Very Truly,

Annamalai Annamalai,
56820-379

Page 1 of 1        Evidence no.3

03/14/2023

To. Daniel Sproul, Nathan Simpkins, S.Byrum, S.wallace, Dr.Pass, Dr.Brooks,
Ms.Hottess, Chaplin Holem, Dr.Fields.

From: Annamalai Annamalai # 56820-379  D-Range

Dear Sir/Madam:

Please refere my several correspondences and oral conversations,
I had with you concerning the "indifferent treatment" and constant
violations with relations to my ability to observe my sincerely
held Hindu Religious beliefs. As a nutshell I am still undergoing
lot of trauma, pains and sufferings with no meaningful reliefs
for my "Hindu Meals situation". I am on constant hunger.Most notably
I have seen in the chow hall that the Muslim and Jewish inmates
are regulary getting their Kosher and Halal meals every day.That
means, why I am discriminated and or having indifferent treatment
from YOU ALL.My health conditions are getting worsening,and my
repeated requests to provide me with "medical diets" in compliance
with my chronic health conditions also never taken care by the
medical services staffs inclusive of Dr.Pass, Dr.Brooks at all.

ALL Iask is a simple relief, just provide me with meals every
day in compliance woith my sincerely held religious beliefs
and in compliance also with my chronic health conditions.These
constant discrimination has increased my mental stress, pains
and sufferings, and I am on constant trauma, and painfull feelings
about my inability to observe my hindu faith in full.Dr.Fields
fuly aware of my situation and my repeated requests to her also
never cared for as YOU ALL DID SO FAR,

I beg for you all mercy, and please fix my religious diet and
medical diet situation, and my repeated plea to chaplin Holem
also does not yield any fruits, indeed.

Thank you and God Bless You.

Respectfully submitted this day of March 14th 2023.

Annamalai A.
D-Unit

Page 1 of 1

Evidence no.4

April 01st 2023

From:
    Annamalai Annamalai
    BOP ID 56820-379
    D-Unit, USP-MARIOn, Illinois-62959

To.
    S.Holem, D.Sproul, K.Hill, N.Simpkins,Hottess, Travis, Fields,
Wallace, Brooks, Pass, Byrum.

Dear Sir/Madam.

    <u>Ref: My several earlier written and oral communications with you</u>
<u>about the deprivation of constitutional rights, religious diet and etc</u>

Dear Sir/Madam,

    Please refrer about our various communications in which I have
repeatedly broughtforth about my religious diet and medical diets
were/are not yet fixed and I am enduring both physical and as well
as mental health harms.

    I respectfully pray that YOU all step in to fix my issues and I
would highly appreciate it.

Thank you.

Respectfully Submitted this day of April, 01, 2023.

Annamalai Annamalai, Victim

Page 1 of 1

<u>Evidence no.5</u>

April, 10th 2023

To:
Mr.daniel Sproul-Warden
Ms.Annabell Fields- Chief Psychologist
Mr.Travis-Food Services Supervisor
Dr.Randall Pass-Medical director
Dr.Leslie Brooks- PA
S.Holem-Chaplin
Stacey Byrum & S.wallace-Unit managers
Hottess-Trust Fund Supervisor
Federal Bureau of Prisons.


Ref: Mr.annamalai's various express and oral communications about hi
his request for Religious diets & Medical diets-Indifferent acts

Sub: Humbly prayer to fix the drastic and tortorous situation-Reg  --


Dear sir/Madam:

    Please refer all my dozens of correspondences about the following
matters:

        (1).Violations of religious Freedom Restoration Act,
        (2).Violations under Religious land Use and Institutionalized
            persons Act,
        (3).Violations under Free Exercise claims of Mr.Annamalai,
        (4).Violations under Establishment clause,
        (5).Violation under Eighth's cruel and unusual punishment
            clause,
        (6). Failure to train the bureau staffs of USP-MARION
        by warden daniel sproul.


I respectfully ask YOU all to fix my ongoing and indifferent treatments
all orchestrated by YOU all brazenly and harm and torture me in an
indefinite manner.It appears that, I will soon be transferred to
a new institution ( I have asked for an institution at California
from my case manager).Having said, to avoid my indefinite harms to
my physical and mental health, because of  my inability to receive
an appropriate religious diet  and as well as medical diet, I am
again asking  YOU ALL one more time finally to resollve my religious
diets and medical diets issues immediately.I am in lot of pains,
sufferings and in extreme depression and trauma indeed.


ALL I ask is show your MERCY and treat me like a "human" with flush
and blood and do not put me any more by you and or by your privies
in any manner for the "forced starvation".Thank you and God bless
you all.

                                    Very Truly

                            Annamalai A, 56820-379 ( D-Unit )

            Page 1 of 1                    Evidence no.6

October 10th 2022

From: Annamalai Annamalai  # 56820-379  ( "X Unit")

To: Mr.D.Sproul, Warden, S.Holem ( Chaplin ) Mr.S.Wallace ( Unit Manager)
    Ms.S.Byrum ( Unit Manager ) Mr.Travis ( Food Services Supervisor )
    Ms.Hottess ( Trust Fund supervisor ), Dr.Randall Pass ( medical
    director ), L.Brooks ( Physician Assistant ) :¬₫


Dear Sir, Madam.

 I have sent numerous written requests as well as oral requests have
been made so far about my "forced starvation" which is undergoing
on a day to day basis. I have prepared a brief in support for you
to review, consider and also to fix my religious diet combined with
appropriate for my medical situation also swiftly.

I would highly appreciate all your cooperation and assistance in
this simple matter.


Thank you and God bless you all.


Very Truly Yours,

Annamalai Annamalai
56820-379


Enclosures:-


page 1 of 1

Evidence no.7

May 10th 2023.        EMERGENCY REQUEST & TIME SENSITIVE

To. L.Stringer, Counsellor, USP-THOMSON

From. Annamalai A. ( B1-31 )

Dear L.Stringer.

　　　Good day to you sir. I came from USP-MARION in the third week of April, 2023.When, I was in USP-MARION, I have filed adminis--trative remedy requests concerning my medical diet and religious diets/meals in compliance with my "Hindu faith" and as well as in compliance with my "worsening diabetes" conditions.

　　　As amatter of fact, initially I have filed my BP-8 for the Medical director Randall ½Pass, tne Trust.Fund supervisor Hottess, Chaplin S.Holem, Food Service supervisor Travis.As per my under-standing all such BP-8's went to the warden via my BP-9's by challanging the erroneous responses of such relevant BP-8s, before IK have been transferred to this institution.Now, I belive the time to respond to my BP-9s were well passed the threshold to responduto my BP-9."

　　　Most notably the "chromological summary" sheet you have given about my BP-9's specifically illustrate that the responses were already docketed from the warden Sproul of the USP-MARION and I have not received anything still.You also indicated that, I cannot file a BP-8, to expedite and or request those responses to me swiftly so that, I can appeal to the Region. The problem for me is although I can move on to the region for appeal such matters,½ I really do not know what was the responses from the warden Sproul and also I need to attach the BP-9 responses, or otherwise the region always kicks back my BP-10 as incomplete as per my past experiences.

　　　Having said, I need you to immediately step in as my counsellor to get the copies of my BP-9 and its responses, or otherwise I need to take a stand that the "administrative remedy" options are/ were not available or otherwise afforded to me.Please understand that,, the time is of the essence of these matters, and I am w awaiting for your immediate assistance to provide me with the BP⁼9 responses accordingly.

Thank you and God Bless you.


Very Truly,

Annamalai .a
56820-379


                    Page 1 of 1                    Evidence no.8

05.30.2023

From: Annamalai Annamalai # 56820-379

To: Mr.Stringer, Counsellor B1 unit

Dear Mr.Stringer:

Please refere my earlier correspondence dated may 10th 2023 about my unreceived BP-9 respobses from USP-MARION concerning my "food-diet situation, submitted to various departments out there.For your immediate reference and recollection, I have also enclosed my May 10th correspondence herewith and by reference fully and expressly reincorporated herein.

Please appreciate that, I need to file my BP-10 to address such food ( religious as well as medical diet)situatuicn, since I am on constnat "strarvation" and its so harmful and painful to me every day.I shall not be forced to starvation, indeed.

I beg for your mercy to call and or e-mail the adminstrative remedy coordinàtor at USP-MARIOn, to immediatelỳ transmit the BP-9 records so that, I can timely file my BP-10 to address such matters. Respectfully, I shall not be prevented in any means to exhaus my adminstratice remedies in any form.

YOU are my counsellor and I can not go anywhere, except YOU, regarding such matters.I would highly appreciate your attention and assistance towards these matters.

Respectfully Submitted.

Annamalai Annamalai B1-cell # 31.

Enclosures:-

Page 1 of 1

Evidence no.9

June 7th 2023

To. Mr.Lloyd Stringer, Counsellor USP-THOMSON

From. Annamalai Annamalai # 56820-379 B1-unit

Ref: My earlier correspondences dated 05.30.2023, 05.10.2023 and several of our oral communications concerning my BP-9 situations

Sub:" Emergency request for BP-10 ( blank ones and copies of my BP-9 records from USP-MARION concerning my religious and medical diet situation, Reg.

Dear L.Stringer: How are you.I am really suprised to see the indifferent treatment and complete inattention towards my repeated requests for my BP-9 copies which I have filed at USP-MARION since September 2022 onwards.I have not received anything from you until this minute.

Sir, Its already too late to produce me with BP-9 responses from the USP-MARION's warden.Also I am not awre of any extension ] has been taken to respond to Bp-9 either.Having said I need your immediate action to secure such BP-9 records concerning my religious diet matters ( please see the enclosed former corres-pondences to you concerning such matters ), which were not yet addressed still.

Sir, I am undergoing extensive hunger and starvation every day, because of my inability to receive my food/mea;ls in accordance with the hindu faith here at this institution as well. Your immediate support being my counsellor will at least find a way to recive my food every day, as soon as the region knows about my imminent conditions.

I respectfully say that, my ability to exhaust any and all adminis-trative remedies on my food issues is now stalled and you guys made that as unavailable towards me, indded.I one more time beg you to assist me to get the ¯¯ records concerning my administrative remedy records submitted at USP-MARION with relates to my religious diets and also medical diets.I would greatly appreciate such a compassion sir.

Very Truly Yours

Annamalai A # 56820-379

Enclosures: The earler correspondences to you.

page 1 of 1                    Evidence no.10

July 11th 2023

To.
    Ms.Colette Peters
    Director
    Federal Bureau of prisons
    washington D.C.

    Sub: The constant mental, emotional tortures, deprivation of food in BOP,
    religious discrimination, indifferent treatment, forced starvation and
    request for an immediate intervention of "YOU to "protect me"-Reg

    Dear Director Peters:

I trust this correspondence shall bring you all the blessings of God for YOU and
as well as for all of your loved ones.

   To introduce me with a short backdrop: I am the first and the only "human"
and a man of Hindu faith and also a former Hindu High priest and presently
with over 17 million faithful followers, with a 18 years prison time for a so
called Bank fraud convictions" allegdly involving $11,854-00 with zero
restitution to any one.Most notably the banks which I have defrauded never and
ever existed anywhere in the world either!

   Then when I got incarcertaed in the FBOP I was thrown in to a most notorious
terrorist unit also know'n as Communications managment unit and also known as
Counter terrorism unit ( CMU/CTU ) I was housed at such units both at
USP-MARIOn and as well as Terre Haute, and getting transferred "after I endure
"beaten up, shead blood" in the hands of most radicalized "Muslim Terrorists"
and "White supremacists".Most notably I have faced my own death in an unprovoked
fight on10.13.2021 at CMU/CTU of USP-MARION by the "patent.failure to protect me"
which has lead to several irreparable mental, emotional and physical harms.Latter
lead to an explosive civil rights action at the Southern District of illinois
at E.St Louis district court of Illinois.The case no is 3:22-cv-01210-JPG,
Annamalai Annamalai Vs.daniel Sproul, et al. Take notice of such matters as well.

   In the meanwhile, I have brought several FBOP staffs and U.S.Department of
justice staffs as "party-in-privity" and I have secured a final order of
Execution and Order of specific performance from the Indiana court for
various tortures and harms inflicted by such federal officials as well
Such order s no more appealable now.

   See, case no 84D01-1704-MI-2768 Annamalai Annamalai Vs.Vishal Kalyani, et al
at Vigo County superior Court, Terre haute Indiana for more and better
understanding.

   In the due course of my placement at CMU/CTU and other prisons by FBOP, I
was having "forced starvation" and the officials under you were every one appears
to be not well trained and caused to violate Religious freedom Restoration Act,
Religious land use and Institutionalized persons act, violation under first
amendment's establishment clause, free Exercise clause, intentional discrimiantion,
infliction of my emotional distress and etc, by patently failing to take care
of my years  long request for Religious diet in compliance with my sincerely

religious beliefs about NOT to eat any BEEF meat and or any MEAT products came in any means in contact with such Meats.Until, I am mailing this correspondence, my religious diet situation has not been fixed and I am in presntly a "forced starvation" with worsening chronic health conditions.

Please find herewith several of the correspondences submitted to your employees at USP-MARIOn and also at Thomson.No one appears to be either properly trained to take care of my simple requests and repeatedly harming me.

Such attached correspondences are fully and expressly reincorporated herein by reference.WHEREFORE, I respectfully ask you to step-in immediately to order thees these bureau staffs to take care of my religious diets and as wella s medical diets immediately and also please take proper measures to train them properly, so that they can do the job in a proper manner. I am ready willing and able to settle the present contrvesrsies in agoodfaith manner.

Thank. you and God bless you.


Very Truly,

Annamalai Annamalai
56820-379
United states Penitentiary
Thomson Illinois.


Enclosures:

The Various written correspondences directed to your employees.

Evidence no.11

<u>ADDENDUM TO THE WRITTEN CORRESPONDENCE ABOUT RELIGIOUS DIETARY</u>
<u>ISSUES, INDIFFERENT TREATMENTS, VIOLATION OF CONSTITUTIONAL RIGHTS</u>
<u>HARMS AND INJURIES INFLICTED ON MR.ANNAMALAI</u>

Mr.Annamalai being a former Hindu High priest a man of Hindu faith always held "sincere "Hindu" religious beliefs.He is a practicing, life long adherent to Hinduism.That one of the core and sincerely held religious beliefs is to neither eat nor come into "close personal contact" with beef and pork.The USP-MARION, Illinois and as well as the present facility FCI-OXFORD, Wisconsin, both serves "beef and Porks" ( in those main messhall and facilities ).[1]

The cross contamination that regularly occured/occurs between beef and non-beef products in kitchens violates Mr.Annamalai's religious dietry restrictions.Most specifically, when the beef meal is being served in the messhall, it is cooked in the same kitchen by the same cooks, served using the same utensils, and served in the same line as the "no-flesh"/Vegetarian options. Becuase of the close proximity and risk of cross contamination, Mr.Annamalai eats in the messhall only when he is very hungry as infrequently as possible.To avoid going hungry he needs to buy some items from commissary by spending his "little money" given by his children from India.

Respectfully, Mr.Annamalai cannot eat in the messhall regularly without violating his religious dietary laws of Hindu Religion/faith, which constitutes a substantial burden on his sincerely held Hinu Religious beliefs.

---

1. Mr.Annamalai is from India and of a caste/Tribe known as "Nagarathar".His caste/ Tribe does NOT forbid eating any other Non-vegetarian items of Chicken, lamb, Goats, fish and other sea food items.To avoid any confusion, the Hindu faith certain sects of Hindu faith followers Never and ever eat any kinds of Non-vegetarian items and mostly they are vegans/vegetarians.also certain sects of Hindu faith followers shall not and or will not eat anything growing from the 'inside of the earth', like potatoes, onions, garlic and etc.Mr.Annamalai follows his nagarathar sect of the Hindu faith and eats "Chicken, sea foods, ( not lamb and Goats ( since he does not want to eat them ) eggs and defenitely can not eat the "completely forbidden Beef-meat items in any formats. He was NOt asking for Pure vegetarian religious diet in compliance with the Hindu faith, he in fact repeatedly asked for the religious diets NOT contaminated, cross contaminated and or came in contact with Beef meat items in any manner and also do not / did not want to eat because of his sincerely held Hindu religious beliefs items cooked in any manner at a place(s) where the beef-meat also prepared and or cooked or served. ( Most interestingly the famous "American fodd chain MCDonalds do not serve "beef related" Burgres ( chhese burgers ) and of any burgers and or items with any kinds of Beef related meat and or ingridents in INDIA ).

Since my arrival at USP-MARIOn, Illinois, I have repeatedly made concerted efforts to live according to the teachings of his Hindu faith, which of course "totally" forbidden, eating and or consuming "Beef meat items in any formats". Mr.Annamalai also filed grievances, tort claims based on injuries caused to his physical health because of ineffective food lead to several health complications inclusive of worsening diabetes, and also the emotional harms caused by complete indifferent treatment of his need for religious diet in compliance with his Hindu beliefs lead to cause to worsen his physical health harms and injuries, lost his body weight forced hunger lead to his grievences and tort claims and etc, were on or about February-March of 2023, filed.

Mr.Annamalai was "forced" to go for self select menu from the food menu the 'no-flesh items' from the mainline.However that does not address the food preparation concerns of the Hindu faith, which mirrors that of the Jewish faith as to preparation of kosher foods or that of Muslims as to preparation of halal foods.In USP-MARIOn ( as well as now at FCI-OXFORD ) the prison ( FBOP ) and the prison authorities/ staffs routinely accomdates the meal requirements for inmates who are Jewish and or Muslim, because their foods are specially prepared by "meal Mart" an independant contractor, that provides "common fare" for those inmates.Those inmates, indeed, are not required to "self-select" no flesh items from the mainline prison menu, but that Mr.Annamalai is a man of Hindu faith and a Hindu religious follower, is being treated indifferently than Jewish and Muslims inmates, in patent and a straight--forward violations of Equal protection rights guranteed by the United States constitution and as well as in violation of the "establishment clause"

In Mr.Annamalai's situation every one of the named officials herein were/are personally noticed about the indifferent treatment expressly and as well as in a repeated expressed and as well as oral manner.However, NONe of you appers to care about the known and willing participation to harm, injure Mr.Annamalai and complete disrespect to the sincerely held religious beliefs of Annamlai and clearly, also appears clearly that, you have knowingly caused to violate the "rights to practice Mr.Annamalai's faith and also observe" the same.

to care about your known and willing participation to harm, injure Mr.Annamalai and complete disrespect to the sincerely held religious beliefs of the plaintiff, and you have also appears clearly that, you have knowingly caused to violate the "rights to practice Mr.Annamalai's faith and also observe" the same.See numerous express correspondences submitted specifically by personally addressing to each one of you about the continued "forced starvation inflicted on me.However it clearly appears that no one is interested to take care of this simple and a straightforward and sensitive request.

Mr.Annamalai as a devout Hindu, he must adhere to a diet, devoid of any food that has come in contact with MEAT, MEAT by products, or utensils which have come into contact with meat or meat by products.Even Mr.Annamalai, say he is willing to "select" the "no flesh items from the mainline", it does not address the real concerns of a Hindu faith which require strict adherence in meal preparation, requiring that the foods do not come into contact with any "flesh(MEAT ) items".Further the cyrrent common fare/halal food trays coming from the outside vendor as certified religious meals to FBOP is designed for Jewish and Muslim faith, inmates and is incom-patible with Hindu religious practice because the so called "no-flesh tray/meals" and the MEAT trays are being served at the same mainline, prepared at the same kitchen using the same utensils, oils, spoons, pots and also by several of the "inamte-cooks" nas "no religious training in what kind of and or how to cook food for a "Hindu faith followers", which is being well practiced in preparing the food trays for the Jewish and Muslim faith inmates-followers, which are being supplied by an outside contractor-rendor of the Federal Bureau of Prisons.

. As a matter of fact, worsening diabetes has already harmed and injured Mr.Annamalai very well.He as a matter of indisputable fact has "lost body hair" in many parts of his body, by looisng them, because of the debliating and worsening chronic-deiabetic conditions.As learned from the daughter of the plaintiff who is also a medical professional, as such "loosing hair" from the several parts of the body is the worst sign of exacerbating and or uncontolable chronic diabetes./

Now, ALL Mr.Annamalai pray to YOU all that, Please do not harm, injure him any more mentally, emotionally and also physically.Please take "immediate measures to provide with meals in compliancewith Hindu faith. Thank you and God Bless you all.

Very Truly Submitted.

Annamalai Annamalai
Victim

Page 3 of 3

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

ANNAMALAI ANNAMALAI, a/k/a
Swamiji Sri Selvam Siddhar

**(b)** County of Residence of First Listed Plaintiff _____
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

Pro se, FCI Oxford Federal Correctional Institution
P.O. Box 1000, Oxford, WI 53952

## DEFENDANTS

Federal Bureau of Prisons, United States of America, see Attachment

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:  IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

See Attachment.

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question *(U.S. Government Not a Party)*

☒ 2  U.S. Government Defendant

☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated *or* Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated *and* Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br><br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 835 Patent - Abbreviated New Drug Application<br>☐ 840 Trademark<br>☐ 880 Defend Trade Secrets Act of 2016 | ☐ 375 False Claims Act<br>☐ 376 Qui Tam (31 USC 3729(a))<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit (15 USC 1681 or 1692)<br>☐ 485 Telephone Consumer Protection Act<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange |
| | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act | **SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g))<br><br>**FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | ☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☒ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☐ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | |

## V. ORIGIN *(Place an "X" in One Box Only)*

☒ 1 Original Proceeding  ☐ 2 Removed from State Court  ☐ 3 Remanded from Appellate Court  ☐ 4 Reinstated or Reopened  ☐ 5 Transferred from Another District *(specify)*  ☐ 6 Multidistrict Litigation - Transfer  ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 U.S.C. 1331 (civil action arising under Constitution and laws of USA); 28 U.S.C. 1442 (removal by federal agency)

Brief description of cause:
Federal Inmate filing constitutional claims and FTCA action against BOP and USA in state court

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ _____

CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*

JUDGE _____    DOCKET NUMBER _____

DATE  Apr 22, 2024

SIGNATURE OF ATTORNEY OF RECORD
SUZANNE GARRISON

Digitally signed by SUZANNE GARRISON
Date: 2024.04.22 14:07:36 -05'00'

**FOR OFFICE USE ONLY**

RECEIPT # _____   AMOUNT _____   APPLYING IFP _____   JUDGE _____   MAG. JUDGE _____

Case 3:24-cv-01154    Document 1-4    Filed 04/22/24    Page 2 of 2    Page ID #62

## ATTACHMENT TO CIVIL COVER SHEET

### Defendants

Colette Peters
S. Holem
Daniel Sproul
Nathan Simpkins
Stacey Byrum
S. Wallace
Randall Pass
Leslie Brooks
Hottess
John & Doe 1-10
Current Warden of FCI-Oxford
Annabell Fields

### Attorneys for Defendants (continued)

*Attorneys for the United States of America and*
*Federal Bureau of Prisons:*
RACHELLE AUD CROWE
United States Attorney

SUZANNE M. GARRISON
Assistant United States Attorney
United States Attorney's Office
Nine Executive Drive
Fairview Heights, Illinois 62208-1344
Phone:  (618) 628-3700
Fax:    (618) 622-3810
E-Mail:  Suzanne.Garrison@usdoj.gov





RECEIVED

MAY 02 2024

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF ILLINOIS
EAST ST. LOUIS OFFICE